## KENNEDY v. FALDE *et al.*

1.  EVIDENCE—LETTERS—AMBIGUITIES IN—PAROL EVIDENCE TO EX-
    PLAIN.

    Letters competent as evidence in support of an issue, when the
    language used is ambiguous or uncertain or capable of different con-
    structions, may be explained by oral evidence of extrinsic circum-
    stances, the real meaning of such case being a question of fact for the
    jury.

2.  SURETY—MAY REQUIRE CREDITOR TO PROCEED AGAINST PRINCIPAL—
    WHAT DEMAND NECESSARY—WHEN INSUFFICIENT.

    To exonerate a surety under the provisions of Sec. 1681, Civil
    Code, such a demand must be made that the creditor shall understand
    that it is the wish and direction of the surety to him to proceed against
    the principal in the collection of the debt; and no requirement suscep-
    tible of any other construction will be sufficient. A letter using the
    words, "You had better collect the same from Falde, the principal," is
    not such a requirement as would exonerate the surety.

3.  PRACTICE—EXCEPTION TO CHARGE—INSUFFICIENT.

    No assignment of error, based upon an exception to the charge of
    the court to the jury, will be considered, when the exception taken is
    "to the giving of each and every one of said instructions, the plaintiff
    duly excepted, excepted as specifically as if the same were numbered
    and separately designated." Galloway v. McLean 2 Dak. 372, approved
    and followed.

Filed October 6, 1886.

Appeal from the district court of Lincoln county.

The facts appear in the opinion.

*Kennedy Bros.*, for plaintiff and appellant.

Delay does not exonerate a surety. Civil Code Sec. 1668
Oral evidence was competent to explain the circumstances un
der which the letters were written. Greenleaf Ev. Sec. 297
Civil Code Sec. 938; Pearson v. Post, 2 Dak. 220.

The alleged notice by the surety to the creditor was insuffic-
ient. Wilson v. Tebbetts, 29 Ark. 579; Ranturns v. Lacy, 17
Mo. 299; Dane v. Corduan, 24 Cal. 157, Herrick v. Boost, 4 Hill
657; Hays v. Joseph, 26 Cal. 543: 32 Cal. 577; 34 Cal. 281; 42
Cal. 500; Smith v. Freyler, 1 Pac. 219.

*O. S. Gifford, (A. H. Barton* and *Frank R. Aikens of counsel,)*
for respondents.

The exception to the ruling of the court in refusing to give

appellant's request and the exception to the charge of the court are not specific and are too general to be reviewed on appeal. St. Croix Lumber Co. v. Pennington, 2 Dak. 274; Lincoln v. Chaplin, 7 Wall. 132; Bowers v. U. P. R. R. Co. 7 Pac. Rep. 254; Smith v. Harper, 5 Cal. 330; Jones v. Osgood, 7 N. Y. 233,

There can be no doubt as the meaning of the words employed by Martin and Cuppett relative to Kennedy's collecting from Falde. Kennedy was obliged to use good faith toward the sureties. Story Eq. Jur. Sec. 324; U. S. v. Etting, 11 Wheat. 69.

He cannot shield himself by claiming that the sureties did not in so many words require him to institute suit to collect the notes from Falde. It was sufficient if he could understand clearly their intention, and that it was for Kennedy to bring suit. Franklin v. Franklin, 12 C. L. J. 333; Singer v. Troutman, 49 Barb. 182; Stickler v. Burkholder, 47 Pa. St. 476; Remsen v. Beekman, 25 N. Y. 552; Northern Ins. Co. v. Wright, 76 N. Y. 450; Iole v. Adee, 84 N. Y. 238; Colgrove v. Tallman, 67 N. Y. 95; Manchester Iron Co. v. Sweeting, 10 Wend. 397; Hoffman v. Hulbert, 12 Wend. 377.

We are aware that there are dicta of one or two judges condemning the rule as unsound in cases where its application is not necessary to these decisions, and where indeed the facts did not justify their application. Warner v. Beardslee, 8 Wend 198, per WALWORTH, Chancellor; Herrick v. Borst, 4 Hill 650, per COWAN, J.

PALMER, J. The plaintiff and appellant instituted this action in the district court to recover the balance due upon two promissory notes bearing date July 7, 1877,—one for $165 and the other for $150. Upon the $165 note interest was payable at the rate of 12 per cent per annum, and upon the $150 note interest at 10 per cent. per annum. Upon the $165 note were two indorsements, one for $20 May 5, 1878, and one for $50 December 5, 1879. Upon the $150 note various payments have been made, so that from the plaintiff's complaint there appeared to be due upon the $165 note the sum of $157.72, and upon the $150 note the sum of $17 with the interest.

The defendants Martin and Cuppett only made answer. They admit the execution and delivery of the notes, and for defense present the following issues. *First.* That they signed as sureties for Falde, and never received any of the consideration for said notes, and that the plaintiff so understood at the time of their execution. *Second.* That after the notes became due the defendants Cuppett and Martin requested the plaintiff to collect the same from defendant Falde; that defendant Falde was then amply able to pay, and had sufficient property subject to execution; that the plaintiff neglected and refused so to do; and that Falde had become insolvent. *Third.* That, after the maturity of said notes, the plaintiff, without the knowledge or consent of Cuppett and Martin, by agreement with defendant Falde, and upon various occasions, extended the time of payment of said notes, and upon one occasion, upon the fifth day of December, 1879, the plaintiff, at the solicitation of defendant Falde, in consideration that defendant Falde would execute to plaintiff a note of $50 secured by a chattel mortgage, extended the time of payment upon said notes; that the plaintiff accepted said security and $50 note, and indorsed the $50 upon one of the notes described in the complaint; said $50 note was payable five months after its date, and bore interest at the rate of 12 per cent.; that said extensions were granted to defendant Falde till such time as he became entirely insolvent, and unable to pay any portion of his debts. Tried by jury, and verdict and judgment for the defendants Martin and Cuppett. Exceptions allowed and the case comes to this court for review.

For the purpose of showing an extension of time to Falde, Cuppett and Martin offered in evidence various letters written to Falde by Plaintiff, Kennedy, during the period intervening between the time the notes matured and the commencement of this action, one of which is as follows:

DECEMBER 12, 1878.

*Mr. Falde:* I wrote you a few days ago about some matters, and also stated that I could not make another extension without some money. * * * Respectfully, BEN KENNEDY."

This and other letters of similar import were offered and admitted in evidence against the plaintiff's objection.

What object the respondents had in offering them is not apparent, unless it was as evidence at least tending to establish the issue of extension granted by the creditor to the principal without notice to the sureties. The letters having been admitted in evidence by the trial court, the plaintiff, in rebuttal, offered to show by oral proof and by the plaintiff himself, that a long course of similar dealings had been carried on between plaintiff and defendant, and extending over a number of years, and that the notes and extensions referred to in these letters related to other transactions and other notes than those in litigation in this action. As nothing appears in the letters themselves which would enable a court or jury to determine conclusively that reference was made to the notes in suit as distinguished from other like evidences of debt which might then have been outstanding, it does not readily appear why the explanation offered was not admitted by the court below. The proposition is elementary that letters competent as evidence in support of an issue, but written in a manner ambiguous or uncertain, and capable of different construction, or unintelligible without the aid of extrinsic circumstances, their meaning becomes a question of fact for the jury; and parol evidence of such extrinsic facts is admissible. This evidence being directed to the most important question presented in the case, viz., extension of time to the principal, it was important that the jury should have had all the evidence upon this subject to which, under the rules of evidence, they were entitled. Its exclusion was error, and for this reason the judgment must be reversed, and a new trial granted.

As this conclusion disposes of the case, nothing further need be said. Another question, however, is presented and earnestly urged by the learned counsel for respondents, and, as it is fairly presented in the case, it is thought advisable by the court to express our views upon it.

About 14 months after one of the notes matured, and two months after the last became due, Martin, in response to notice

from Kennedy that the notes were past due and unpaid, wrote a letter to the plaintiff and used this language: "You had better collect the same from Falde, the principal. I don't know how he is fixed now to pay, but he has been considered solvent until postoffice matters came up, which I presume you have heard all about ere this." About the same time, Cuppett says in respose to the question: "You never gave him notice to see Falde, did you? Answer. Only in the letter after he wrote me in 1878, I told him Falde had some property here; that he should have collected it from him. I told him he had better get it from Falde if he wanted anything." And the question presented is, was that such a notice to the holder of the note to proceed against the principal that, upon refusal or neglect of the creditor to act, would affect or release the sureties?

The most advanced doctrine in this direction to be found in this country has been enunciated by the courts of New York, Pennsylvania, Alabama, Arkansas, and perhaps Ohio; and it may be conceded that, so far as these courts are concerned, the rule seems settled that it is the surety's right and a part of his equity, to see that the creditor makes a prompt use of the remedies in his hands, and that nothing should be lost by reason of the creditor's supineness or negligence; and those courts may be said to have established the rule that equity will compel the creditor to sue at the request of the surety, and will hold the surety discharged if the request be not complied with, subject to two very important qualifications. To invoke this rule even in equity, it must be shown—*First*, that such failure to proceed has resulted in actual injury to the surety, which must be shown by proving that the principal was solvent when the request was made, and became insolvent subsequently; and, *second*, that accompanying the request there be an explicit notice that, in case the creditor should fail to sue, the surety will thereupon hold himself discharged. Bish. Eq. § 339. It may be questioned, however, if this, as an equity rule even, is not doubted as unsound by most of the courts of this country.

Giving, then, the utmost weight to the language of the sureties in this case, its weakness and insufficiency is apparent,

even when tested by rules applicable in a court of equity. The authorities substantially agree that. in the absence of a statute, the unheeded request by a surety that the creditor proceed against the principal after the maturity of the note, and while the solvency of the principal is not questioned, will not operate to discharge the surety, although the principal afterwards became insolvent. As has just been stated, the equity rule requires that, accompanying the request to proceed, there be an explicit notice that, in case the creditor shall fail to sue, the surety will hold himself discharged.

No more violent construction could be given to language than to say the notice (if it may be called such) of either of the sureties in the case at bar, would convey to Kennedy the idea that they required of him to proceed against the principal, and, in case he failed so to do, they would consider themselves released. There may be some question whether, at the time this notice to proceed (such as it was) was given, Falde had not become insolvent. Martin in his letter says. "I don't know how he is fixed now to pay, but he has been considered solvent until postoffice matters came up." If this notice was not given until Falde's insolvency had become fixed, of course no claim of this character could be maintained. But, assuming such was not the case, it seems conclusive that no liability of the sureties was released, even when considered from an equitable standpoint, and weighed in the balance of judicial determination of the most advanced courts.

We have considered this from the equitable standpoint, because confusion sometimes results from a consideration of these questions by courts constituted as the courts of this territory are, exercising both law and chancery powers. However, no difficulty should arise if we bear in mind the nature and liability of the parties to a contract like the one at bar. The contract of the sureties was to pay the debt. When these notes became due, the legal liability of the sureties became as fixed as that of the principal debtor; and a mere request to sue or collect of the principal could not affect that fixed liability.

These are conclusions reached without the aid of a statute.

This brings us to the consideration of the provisions of the code relating to the powers, duties, rights and liability of the sureties. Sections 1680–1686, inclusive, Civil Code.

A surety has all the rights of a guarantor; may compel the principal to perform the obligation when due; may satisfy the principle obligation with or without legal proceedings, "and may compel the principal to reimburse him, with costs and expenses;" is entitled to all the security held by the creditor; and is entitled to enforce all the remedies which the creditor has against the principal. Section 1681: A surety "may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if, in such case, the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

If the surety declines to pursue any of the courses above pointed out, and relies upon the provisions of the section just quoted, what are his duties? If the surety meets the legal obligation to the creditor which he has voluntarily assumed, by the provisions of our code the legal and equitable door is thrown open wide for him to require his principal to respond in adequate damages. When the obligation matures and is unpaid then the liability of the surety becomes fixed. His power to proceed against the principal is certain. The option is then with him to remain inactive, or invoke the remedies provided by law; but in either event no change is wrought affecting the liability of the sureties to the creditor, unless the surety "requires the creditor to proceed against the principal. What, then, is it to "require?"

In the case at bar it was this. "You had better collect the sum from Mr. Falde." Can it be claimed that such language was a requirement made upon the principal to proceed and collect the sum from Falde, and, if he neglected so to do, the surety would consider himself released? Clearly not. To require is "to demand; to insist upon having; to claim as by right and authority; to exact; to claim as indispensable,"—a

synonym, as we understand its use in this section, for "exact," "direct;" "order."

If all the other modes provided by law for the protection of a surety are by him to be disregarded, no action upon his part, under the provisions of Section 1681, will be deemed a compliance with its provision, which falls short of a clear notice to the creditor that he expects and requires him to proceed in collection of the debt against the principal. Such a demand must be made that the creditor should understand that the wish and direction of the surety to him is to proceed against the principal in the collection of the debt. No requirement susceptible of any other construction will be sufficient. Applying this rule to the language used in the case at bar, it will be seen it falls far short of such a "requirement" as is contemplated by statute.

One other question is presented, but, as the case must be reversed for reasons already stated, it will not be considered. It is this: Was the execution of the $50 note, with the additional security, (indorsed, as it was, upon one of the notes in suit) a sufficient consideration for an extension, and, as such, did it affect a change in the contract of suretyship between the creditor and principal debtor which would operate as a release of sureties? *Quœre.*

It seems necessary to periodically refer to and announce the law relating to exceptions taken to the judge's charge to the jury in the trial court. The exception in the case at bar is as follows: "To the giving of each and every one of said instructions the plaintiff duly excepted,—excepted as specifically as if the same were numbered and separately designated,—and asked that his exceptions be made of record, which is accordingly done." It need only be said that this is no exception at all. It is unfortunate that a trial court will allow it a place in the record. Says SHANNON, C. J., in Galloway *et al* v. McLean *et al.* 2 Dak. 372: "An objection or exception should state the point with accurate clearness, so that there can be no question in the appellate court relative to what the question is. Exceptions to the

charge of a court should point out the specific portions of the charge excepted to. If taken to 'each and every ruling separately and distinctly;' it amounts to nothing. The office of an exception is to point out some specific error in law, and the counsel should, by his exception lay his finger upon the precise request refused, or the error in the charge, not only that the court may, upon the error being pointed out, correct it, but also that the court of review may not be left to spell out and dig up errors which, after they are discovered, may be more apparent than real, and may have arisen from mere inadvertance or misapprehension upon the trial."

Upon this subject the views of the court as now constituted are in perfect accord with the rule expressed. No assignment of error based upon the exception taken to the charge of the court can be considered, but it is believed sufficient of appellant's points are saved (to present the questions passed upon) by his requests to charge which were refused by the court.

Judgment reversed and new trial ordered.

All of the justices concurring.

### NOTE.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY BY FAILURE TO SUE PRINCIPAL. The mere failure of a creditor to sue the principal when the debt becomes due does not discharge the surety. Sheldon v. Williams, (Neb.) 9 N. W. Rep. 86; Knox v. Hays, (Mich.) 2 N. W. Rep. 670; nor even, in the absense of statutory provisions, the additional fact that the surety requests the creditor to sue the principal, who is then solvent, and afterwards becomes insolvent. Smith v. Freyler (Mont.) 1 Pac. Rep. 214.

In some states the statute gives the surety the right te require the creditor to bring suit, or permit him to do so. Moore v. Peterson, (Iowa) 20 N. W. Rep. 744; Dorothy v. Hicks, (Iowa) 18 N. W. Rep. 909; German-American Bank v. Denmire, (Iowa) 12 N. W. Rep. 237; Meriden Plate Co. v. Flory, (Ohio) 7 N. E. Rep. 763; Scales v. Cox, (Ind.) 6 N. E. Rep. 622; and the failure of the creditor to have suit actually commenced within the time prescribed will discharge the surety, German-American Bank v. Denmire, (Iowa) 12 N. W. Rep. 237. The notice, to be effective, cannot be given until after the cause of action accrues. Scales v. Cox, (Ind.) 6 N. E. Rep. 622. Substantial compliance will satisfy the requirements of the statute, and a notice which is positive in its request to sue, and does not mislead the creditor as to the instrument to be sued on, is sufficient. Meriden Plate Co. v. Flory, (Ohio) 7 N. W. Rep. 753. For notice held sufficient, see same case. For notice held insufficient, see Moore v. Peterson, (Iowa) 20 N. W. Rep. 744.