1997 ND 221

**Jim RABOIN, Plaintiff and Appellant,**

**v.**

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Defendant and Appellee.**

**Civil No. 970105.**

Supreme Court of North Dakota.

Dec. 2, 1997.

Jim Raboin, Fargo, pro se.

Lawrence E. King (argued), Special Assistant Attorney General, Bismarck, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Jim Raboin appealed from a judgment affirming a Workers Compensation Bureau order holding him personally liable under N.D.C.C. § 65–04–26.1 for $16,824.91 in unpaid workers compensation premiums owed by American Classics Corporation (Classics), plus penalty and interest. We conclude the Bureau misapplied the law and improperly assessed personal liability against Raboin for Classics' past due premium debt. We reverse.

[¶ 2] Classics was a North Dakota corporation engaged in the kit car brokering business in Fargo. Its officers and directors included Raboin, president; Joel Skjei, vice president; and Gary Burchill, secretary/treasurer. On July 10, 1990, the Bureau received an application for workers compensation insurance signed by Raboin. Based upon the application estimating wages of $10,200 for the year, the Bureau billed a prepaid premium of $35.70 for the June 28, 1990 through June 30, 1991 payroll period. Classics did not bring the account current until October 8, 1990, when it paid the Bureau $62.12 for the premium plus statutory penalties under N.D.C.C. § 65–04–23.

[¶ 3] On August 1, 1991, the Bureau received a payroll report from Classics, listing an actual gross payroll higher than previously estimated. The Bureau billed Classics an actual premium of $759.85 for the June 28, 1990 through June 30, 1991 payroll period. The actual premium was offset by the $35.70 paid previously, leaving a balance due of $724.15 for the June 28, 1990 through June 30, 1991 payroll period. Classics was also billed an estimated prepaid premium of $1,034.36 for the July 1, 1991 through June 30, 1992 payroll period. Classics never made any payments.

[¶ 4] On April 21, 1992, the Bureau received a final payroll report from Classics, signed by Burchill as secretary/treasurer, listing the payroll from July 1, 1991 through November 21, 1991, when Classics went out of business. Classics was ultimately placed in receivership at the request of the Attorney General's office in May 1992. Based on the report, the Bureau billed an actual premium for that period of $12,731.39. Making adjustment for the previous prepaid premium, the Bureau computed a total balance owing of $13,726.73. Classic's failure to pay resulted in an assessment of $233.94 per month in statutory penalties.

[¶ 5] Because Classics had become a defunct corporation, the Bureau attempted to collect the deficiency from corporate officers Raboin, Skjei and Burchill in their personal capacities under authority of N.D.C.C. § 65–04–26.1. When the Bureau informally determined that Raboin was personally liable, he requested an administrative hearing.

[¶ 6] The Administrative Law Judge (ALJ) found Raboin, Skjei and Burchill "had control of or supervision over the filing of and responsibility for filing premium reports or making payment of premiums" as required to impose personal liability under N.D.C.C. § 65–04–26.1(1). However, because Burchill did not personally have the statutorily required equity interest in Classics to impose liability, he was dismissed from the proceeding. Raboin and Skjei did have the required equity interest, owning 25 percent and 24 percent of Classics, respectively.

[¶ 7] The ALJ found the total balance due from Classics as of the date of the hearing, including statutory penalties, to be $24,279.03. Of this amount, $724.15 was the balance owing before July 1, 1991, which was the effective date of the authorizing legislation, N.D.C.C. § 65–04–26.1. The Bureau did not object to the ALJ deducting this amount from the total owed by Classics, leaving a balance of $23,554.88. The ALJ found Raboin personally liable for $16,824.91, a proportionate fraction of the full amount corresponding to the 15–week period after July 1, 1991 until Raboin was removed as president of Classics on October 7, 1991. The ALJ found Skjei personally liable for $23,554.88, the full amount owing from Classics from July 1, 1991 until November 21, 1991, when the business ended. The Bureau adopted the recommended findings and conclusions of the ALJ. Only Raboin appealed the order to district court, which affirmed the Bureau's decision.

[¶ 8] We review the Bureau's decision, not the decision of the district court, and we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Lucier v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 56, 59 (N.D.1996); N.D.C.C. § 28–32–19. In evaluating the Bureau's findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, but we determine only whether the Bureau reasonably reached its factual conclusions from

the weight of the evidence on the entire record. *Dean v. N.D. Workers Comp. Bureau*, 1997 ND 165, ¶ 14, 567 N.W.2d 626.

[¶ 9] At the time the premium payments at issue were due, N.D.C.C. § 65–04–26.1(1), the only statute imposing personal liability on certain officers and shareholders, provided:

"Any officer, director, or any employee having twenty percent ownership of a corporation and any manager, governor, or any employee having twenty percent ownership of a limited liability company that is an employer under this title who has control of or supervision over the filing of and responsibility for filing premium reports or making payment of premiums under this title, and who fails to file the reports or to make payments as required, is personally liable for premiums or reimbursement, including interest, penalties, and costs in the event the corporation or limited liability company does not pay to the bureau those amounts for which the employer is liable."

[¶ 10] The record supports the ALJ's finding that, at all relevant times, Raboin had more than a 20 percent ownership interest in Classics and had control of or supervision over the filing of and responsibility for filing premium reports or paying premiums. Although Raboin contested the issue at the administrative hearing, he does not dispute this finding on appeal. Rather, Raboin contends he cannot be held liable under the statute because he was not a corporate officer at the time the corporation defaulted on the premiums. Specifically, Raboin asserts he is not liable because, although he was president of the corporation at the time the premium billing notices were received by Classics, no premium due notices had reached their due date while he was still a corporate officer.

[¶ 11] The September 24, 1991 "Premium Billing Statement" the Bureau sent to Classics listed the premium due date as October 31, 1991. It also listed the "Optional Quarterly Payment Schedule," which called for payments of principal and interest on September 30 and November 30, 1991, and February 29 and May 31, 1992. The statement listed the premium balance for the period

June 28, 1990 to June 30, 1991 as $724.15 and the prepaid premium for the period July 1, 1991 to June 30, 1992 as $1,034.36, totaling $1,758.51 as the amount due by October 31, 1991 to pay the premium in full. If Classics chose the optional quarterly payment schedule, a first quarterly payment of $982.74 was due by September 30, 1991. The statement also alerted Classics that:

"A penalty of $25 plus an additional monthly penalty of 2% of the unpaid premium will be assessed if any of the payment options listed below are in default."

[¶ 12] A November 16, 1991 "Past Due Premium Statement" mailed to Classics also listed the premium due date as October 31, 1991 and requested payment of $1,818.68, explaining:

"Your premium was due on the premium due date shown above. 15 days have now elapsed, and your premium is now in default. Penalties have been added as provided by Section 65–04–23 of the North Dakota Century Code.

"Please pay your premium immediately to avoid legal action and the additional monthly penalty of 2% of the unpaid balance."

[¶ 13] It is undisputed that Raboin was relieved of his duties as president of Classics on October 7, 1991 and no longer served as an officer, director, or employee of the corporation after that date. Raboin therefore argues he cannot be held personally liable because he was no longer affiliated with Classics when the premium payments were stated in the notices as becoming due on October 31, 1991.

[¶ 14] The parties have not cited, and we have not found, any case law to assist us in analyzing corporate officer liability for past due premium payments in a workers compensation context.[1] In support of his argument, Raboin relies primarily on N.D.C.C. § 65–04–23, which provides in part, "[w]hen an employer defaults in the payment of any premium, any installment of the premium, any penalty or interest . . ., the employer at the time of default is subject to a penalty. . . ." Raboin asserts the language "employer at the time of default" is synonymous with the corporate officer who is personally liable under N.D.C.C. § 65–04–26.1(1) and has the requisite equity interest and control of the employer who fails to pay. Because there was no "default" on the payment due October 31, 1991, while Raboin served as president of Classics, he asserts he cannot be personally liable.

[¶ 15] The Bureau counters that N.D.C.C. § 65–04–23 is simply the general statute assessing penalties for a default in an employer's payment of premiums. Here, Classics, not Raboin, was the employer at the time of default, and under the statute, premiums and penalties were properly assessed against the corporate entity. The Bureau contends N.D.C.C. § 65–04–26.1 is the pertinent statute here and addresses the liability of a corporate officer who has the requisite control or supervision "in the event the corporation . . . does not pay to the bureau those amounts for which the employer is liable." The Bureau asserts the statute therefore allows assessment of liability against the appropriate corporate officer if the corporation does not pay the amount for which the employer is liable, which is what the Bureau did

---

1. Other states which require workers compensation insurance in an exclusive state fund, like North Dakota, do provide penalties for an employer's failure to timely submit premiums or other information. *See, e.g.*, Nev.Rev.Stat.Ann. § 616B.224 (Michie 1995); Ohio Rev.Code Ann. § 4123.32 (Anderson 1997); Wash.Rev.Code § 51.16.150 (1996); W.Va.Code Ann. § 23–2–5a (Michie 1997); Wyo.Stat.Ann. § 27–14–203 (Michie 1997). Some of these jurisdictions have also placed, like North Dakota, personal liability upon corporate officers for an employer's failure to pay premiums by statute, *see, e.g.*, Ohio Rev. Code Ann. § 4123.50 (Anderson 1997), and by judicial decision, *see, e.g.*, *State v. McCompton &*

*Son Lumber Co., Inc.*, 192 W.Va. 10, 449 S.E.2d 71, 73 (1994). The Supreme Court of Appeals of West Virginia has construed its workers compensation laws to provide criminal responsibility for corporate officers who fail to pay workers compensation premiums or fail to file workers compensation reports. *See State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 483 S.E.2d 71, 75 (1996). However, these jurisdictions provide us little guidance because the language of the statutes differs from North Dakota's workers compensation laws, and in any event, the issue confronting us has not been addressed in those jurisdictions.

in this case. Under the Bureau's analysis, N.D.C.C. § 65–04–26.1 does not limit corporate officer liability to those who were present and active at the time the corporation technically "defaults" on premium payments, but allows assessment against an officer who was present and active during the period the premium was incurred.

[¶ 16] We interpret statutes in context, endeavoring to give meaningful effect to each statute of the same subject matter without rendering one or the other useless. *See Interest of K.G.*, 551 N.W.2d 554, 556 (N.D. 1996). When interpreting statutes, we follow the cardinal rule that our interpretation must be consistent with the expressed legislative intent. *Id.* The legislative purpose of the corporate officer liability statute is obvious. Because conducting business in the corporate form is often done primarily to shield officer shareholders from personal liability for business debts, *see generally Jablonsky v. Klemm*, 377 N.W.2d 560, 563 (N.D.1985), the statute's imposition of personal liability for workers compensation premiums on corporate officers increases the likelihood that those premiums will be paid. *See, e.g.*, 1995 Legislative Assembly, Written Testimony on House Bill No. 1329 before House Industry, Business & Labor Committee by Robert W. Morris, January 23, 1995, at p. 7 ("Corporate Officer liability is a very effective tool for collections.... Frequently, corporations will find some way to pay their workers compensation bill when the corporate officers are informed that they will be held personally liable for the debt if not paid by the corporation."). Yet, what is lacking in the statutory scheme and the legislative history behind it is any specificity on the procedure for assessment of corporate officer liability when, as here, the allegedly liable corporate officer is relieved of his corporate responsibilities while the corporation continues to do business.

[¶ 17] We look first in ascertaining legislative intent at the words used in the statute, giving the words their ordinary, plain language meaning. *See Matter of Estate of Luken*, 551 N.W.2d 794, 799 (N.D. 1996); N.D.C.C. § 1–02–02. The statute at issue here, N.D.C.C. § 65–04–26.1(1), specifi-cally places personal liability on an "officer ... who fails to file the reports or to make payments as required, ..." There is no allegation Raboin failed to file reports, only that he failed to make payments "as required." The word "require" is a word denoting compulsion, meaning to insist upon or demand. *See Zuger v. Zuger*, 1997 ND 97, ¶ 28, 563 N.W.2d 804; *Heck v. Reed*, 529 N.W.2d 155, 162 (N.D.1995); *Kennedy v. Falde*, 4 Dak. 319, 29 N.W. 667, 670 (1886). The plain meaning of the phrase "as required" does not comport with the Bureau's broad interpretation as including the time period when premiums were incurred, even though the premium payments need not be made on the accrual date. A corporate officer is under no compulsion to make premium payments on behalf of the corporation on the accrual date.

[¶ 18] The general statutes applicable here merely call for annual premium payments from employers. Under N.D.C.C. § 65–04–04, each employer "shall pay into the fund annually the amount of premiums determined and fixed by the bureau...." N.D.C.C. § 65–04–19.1 also speaks in terms of an "annual premium ... for the year ..." in addressing a premium discount for implementing a risk management program. Payments with interest on a semiannual or quarterly basis are authorized by N.D.C.C. § 65–04–20, but N.D.C.C. § 65–04–22 also authorizes the Bureau, by proper order and notice, to "require payment of a premium within any time less than one month which, in the judgment of the bureau, is reasonable and necessary to secure the payment of the premium by any employer whose employment within this state is likely to continue for less than one month, and in such case, default shall begin at the end of the time allowed by the bureau for the payment of the premium." That statute also sets forth when entire premiums or installment payments will be considered in default. No order under N.D.C.C. § 65–04–22 was issued in this case. These statutes do not support a conclusion that corporate officers may be held personally liable if they merely have supervisory authority over premium payments when they accrue, rather than when they are required to be paid.

[¶ 19] The Bureau's attempt to distinguish "the employer at the time of default" in N.D.C.C. § 65–04–23 from an officer who fails to pay premiums "as required" in N.D.C.C. § 65–04–26.1(1), and its argument it is irrelevant if the officer is no longer with the corporation when the default occurs, are also unpersuasive. The corporate officer liability statute, by placing responsibility only on an "officer … who fails … to make payments as required," strongly suggests the potentially liable officer must in fact be an officer at the time the default occurs.

■ [¶ 20] Here, Raboin was an officer of Classics until October 7, 1991, when he was relieved of any further corporate responsibilities. Although the premium due notice mentioned a due date of September 30, 1991 if Classics chose the quarterly payment schedule, that was only an option available to the corporation which it was not required to choose. Because the default occurred when Classics failed to pay the total premium on October 31, 1991, several weeks after Raboin was no longer an officer of the corporation, we conclude the Bureau misapplied the law in assessing personal liability against Raboin.

■ [¶ 21] We will not interpret statutes in a manner that produces an absurd or ludicrous result. *See Hovland v. City of Grand Forks,* 1997 ND 95, ¶ 11, 563 N.W.2d 384. The Bureau essentially argues it would be a ludicrous result to allow a corporate officer who is forced from office for leading the corporation to financial ruin to escape personal liability if the officer leaves before premiums become due. Most of the voluminous administrative record in this case is devoted to accusations of which corporate officer caused Classics' failure. The ALJ made no findings on the issue, however. While this result may be possible, the legislature may well have reasoned this possibility did not outweigh the unfairness of holding a former corporate officer personally liable for the corporation's failure to pay premiums when that officer was no longer in any position to enforce payment.

[¶ 22] The Bureau did promulgate a regulation, N.D.A.C. § 92–01–02–23, relating to installment payment of premiums, which provides in part:

"2. Premium subject to installments will be limited to the premium for the advance premium only. Prior period premium deficiencies must be paid in full within the original premium due date. Policy periods beginning on or after July 1, 1991, will be eligible for installment payments under this section. . . ."

Although this regulation did not become effective until November 1, 1991, we do not believe it is out of harmony with the legislature's intention behind the statutory scheme. *See, e.g., Medical Properties v. North Dakota Board of Pharm.,* 80 N.W.2d 87, 90 (N.D. 1956). The regulation suggests that prior period premium deficiencies must be paid in full within the original premium due date and will be considered in default even though a new premium billing includes the deficiency and also assesses a prepaid premium for the upcoming year.

[¶ 23] Assuming the regulation is applicable in this case, Raboin nevertheless would incur no liability under the circumstances. The record reflects the possibility that prior premium deficiencies were in default at a period of time when Raboin was president and had supervisory control over payment of premiums for Classics. However, that deficiency of $724.15 listed in the September 24, 1991 premium billing statement is for the June 28, 1990 to June 30, 1991 premium period. This premium period preceded the effective date of N.D.C.C. § 65–04–26.1, and the Bureau has not attempted to assess personal liability against Classics' corporate officers for unpaid premiums incurred before the effective date of the statute.

[¶ 24] The Bureau's decision is not in accordance with the law. The judgment affirming that decision is reversed.

[¶ 25] VANDE WALLE, C.J., and SANDSTROM, J., concur.

MESCHKE, Justice, dissenting.

[¶ 26] I respectfully dissent. Raboin captained this company on its brief voyage from June 1990 through October 7, 1991, just shortly before November 21, 1991, when it

struck an iceberg of insolvency. To begin, Raboin owned the entire company, but he sold 75% in December 1990, and continued as an 25% owner, a director, and president. Thus, Raboin, most of all, was responsible for the disastrous course of this business, even if he was bumped as president shortly before Classics collided with insolvency and sank. Eventually, Classics went into receivership and filed bankruptcy.

[¶ 27] Raboin plead guilty to conspiracy to commit theft of property by deception in operating Classics, and he was the only officer found criminally responsible. His personal liability for premiums on wages paid during his control, supervision, and responsibility clearly survived the company's bankruptcy under N.D.C.C. 65–04–26.1(2), which, I would emphasize, also declares that *"all wages paid* by the corporation *must be considered earned from the person determined to be personally liable."*

[¶ 28] After a "very long and involved administrative matter," the Administrative Law Judge [ALJ] recommended holding Raboin liable for premiums unpaid on wages paid for 99 days of the last 144 days of Classics's operation:

On August 1, 1991, the Bureau received a payroll report from [Classics]. Unfortunately, the payroll report was unsigned and the Bureau processed and billed the account without demanding a signed report. This was standard Bureau procedure at the time. The payroll report appears to be accurate, however. The payroll report listed gross payroll of $2,490.00 in class 8805, $3,357.50 in class 3504, and $11,842.79 in class 8747. The statutory payroll cap of $3,600.00 was applied to this payroll producing a limited payroll of $2,490.00, $3,357.50, and $10,506.02 respectively. Based upon this limited payroll, [Classics] was billed an actual premium of $759.85 for the 6/28/90 to 6/30/91 payroll period. This actual premium was offset by the $35.70 prepaid that had been billed and paid previously, leaving a balance due for that period of $724.15.

[Classics] was also billed a prepaid premium for the 7/1/91 to 6/30/92 payroll period, in the sum of $1,034.36. The prepaid premium is calculated by multiplying the previous year's payroll, subject to the current year's payroll caps, by the current year's premium rates. No payment was ever made by [Classics] toward this delinquent balance, leading to the assessment of the statutory penalties of $25.00 plus 2% per month.

On April 21, 1992, the Bureau received a final payroll report from [Classics]. This report was signed by [another officer] and listed payroll from 7/1/91 to 11/21/91, when the business ... was closed. The report listed limited payroll of $17,722.65 in class 8805, $58,738.81 in class 3504, and $35,048.55 in class 8747. Based upon this report, the Bureau billed actual premium for the period from 7/1/91 to 11/21/91 in the total sum of $12,731.39. Adding the account balance as of 11/21/91 ($2,029.70) and subtracting the previously billed prepaid premium ($1,034.36) produced a total balance owing of $13,726.73.

Again, this money remained unpaid, resulting in the assessment of statutory penalties in the amount of $233.94 per month. As of 10/15/92, the total balance owing was $14,921.43. The account continued and continues to accrue monthly penalties of $233.94. There were 40 months between 10/15/92 and the hearing in March 1996, leading to the accrual of an additional $9,357.60 in penalties, leaving a total balance due of $24,279.03 as of the date of the hearing.

. . .

2. N.D.C.C. § 65–04–26.1 is the statute that imposes personal liability upon corporate officers for their failure to pay certain debts of their corporation. It bears an effective date of July 1, 1991. [Classic's] account has a renewal date of 7/1/91 which makes it very easy to determine the potential corporate officer liability. Of the $24,279.03 balance owing, $724.15 is the balance owing prior to 7/1/91, leaving a total balance of $23,554.88 potentially subject to corporate officer liability, and for which Raboin ... would be potentially liable as corporate officer[ ].

. . .

(b) Raboin, it is undisputed, did have an equity interest in [Classics], 25%. The evidence shows that for a part of the period of liability in question (7/1/91 to 11/21/91), Raboin was the President of [Classics]. He was the President of [Classics] until he was removed on October 7, 1991. He was also a corporate director. His liability is, then, for the period from July 1, 1991 until October 7, 1991. During this period of time he had potential and actual supervisory responsibility over those individuals who did, could have, or should have filed the reports and made payment of premiums. In other words, he supervised those who had actual responsibility. He was ultimately responsible. He had stated powers and authority and, the evidence clearly shows, he exercised that power and authority at various times. He knew about the requirements for filing and payment of premiums, maybe not about all the particulars, but generally, yet he did nothing to make certain that payments were made. However, he could have made certain that payments were made. He clearly had the authority. The evidence clearly shows that Raboin is liable. He has the requisite equity interest, the official capacity (president and director), and the control of and responsibility (stated and actual) over the people and mechanisms of the corporation that could have, should have, and at times did relate to the reporting and payment of premiums.

. . .

4. Unfortunately, no one involved with [Classics] actively or consciously thought too much about workers compensation premiums. Raboin and [another officer] were both indifferent, for the most part. They had more important things to do, in their minds. [A third officer] in his role as secretary/treasurer did have hands-on involvement, but he also got caught up in apparently more pressing matters that involved the survival of the business. But, it is clear that any of them, or all three, could have done more. They had the authority to do more and exhibited the ability to do more. They had the control over people, stated and actual. They had the control over the day-to-day operations, stated and actual (Raboin, as president and CEO, moreso until October 7, 1991). Even though [another company] exercised a good deal of influence and control over the operations of the business, especially later, because of its equity position and its position on the Board, exercised through [the third officer] and others, it did not appear to have any stated or actual control of or supervision over the day-to-day operations, especially as to such mundane matters as workers compensation premiums and other such day-to-day financial operations. Raboin . . . and [two other officers] had that authority, control and supervisory responsibility, jointly and severally. It was actually exercised or not exercised in various ways over the period in question (but, the failures and the other corporate disputes are to a large extent irrelevant and immaterial for the purposes of the issues in this matter). All three could and should be held accountable and liable.

The ALJ recommended computation of Raboin's liability this way:

Jim Raboin is personally liable for the premiums due and owing by [Classics], under the provisions of N.D.C.C. § 65–04–26.1. But, he is only liable for premiums up until October 7, 1991. He is, therefore, liable for premiums for a fifteen week period after July 1, 1991. It is reasonable that he is liable only for $16,824.91 of the amount due and owing (15/21 × $23,554.88) (up until the time of the hearing—the amounts continue to grow by virtue of penalty and interest for unpaid amounts, for which he remains proportionately liable).

The Bureau adopted the ALJ's recommendations and ruled Raboin was liable for his proportionate share after July 1 through October 7, 1997, of $16,824.91, out of total premiums due and subsequent penalties that totaled $23,554.

[¶ 29] On review of Raboin's appeal, the district court affirmed, reasoning:

Of [Raboin's] four specifications of error, numbers 1, 3, and 4 identify one and the same following issue: whether the Bureau's finding that [Raboin] had control of

or supervision over the filing of and responsibility *for filing premium reports or making payment of premiums for* [Classics] from July 1, 1991 (the effective date of § 65–04–26.1) through October 7, 1991 is supported by a preponderance of the evidence. . . .

. . .

Upon review of the entire file in this matter, this court determines that the Bureau's finding that [Raboin] had control of or supervision over the filing of and responsibility for filing premium reports or making payment of premiums for [Classics] from July 1, 1991 through October 7, 1991, pursuant to section 65–04–26.1, NDCC, is in accordance with section 28–32–19, NDCC. . . .

[¶ 30] Our analysis should begin with the full statutory text. In 1991, the complete statute directed:

**Corporate officer personal liability.**

1. Any officer, director, or any employee having twenty percent ownership of a corporation that is an employer under this title who has control of or supervision over the filing of and responsibility for filing premium reports or making payment of premiums under this title, and who fails to file the reports or to make payments as required, is personally liable for premiums or reimbursement, including interest, penalties, and costs *in the event the corporation does not pay to the bureau those amounts for which the employer is liable.*

2. The personal liability of any person as provided in this section survives dissolution, reorganization, bankruptcy, receivership, or assignment for the benefit of creditors. *For the purposes of this section, all wages paid by the corporation must be considered earned from the person determined to be personally liable.*

3. After notice and opportunity for hearing, the bureau shall make a determination as to the personal liability under this section. A hearing must be requested within thirty days from the date of mailing of the notice. The determination is final unless the person found to be personally liable requests review by the bureau within thirty days after mailing of the notice of determination to the person's last known address.

N.D.C.C. 65–04–26.1 (1991)(emphasis added).[2] Subsection 1 of this statute makes a person who has "control," "supervision," and "responsibility" liable, not because he personally did not file "premium reports" or personally make "payments as required," but rather "in the event the corporation does not pay."

[¶ 31] That duty is enlarged and heightened by subsection 2 that makes "all wages paid by the corporation . . . considered earned from the person determined to be personally liable." N.D.C.C. 65–04–26.1(2)(1991). This law thus fixes a fiduciary responsibility on that officer to ensure payment for "all wages paid by the corporation" "earned from the person . . . personally liable." Thus, all wages paid or payable by Classics from July 1 through October 7 in

2. While no relevant legislative history for the 1991 enactment has been located, there is relevant history from later amendments to this section by 1995 N.D. Laws, ch. 619, § 7. These amendments mainly clarified what officers were liable under subsection 1. Only a minor change was made to subsection 2 in 1995, changing "earned from *the* person determined to be personally liable" to "earned from *any* person determined to be personally liable."

The legislative history with this change states the legislative purpose of the entire section:

Corporate Officer liability is a very effective tool for collections. Corporations, especially small, closely held corporations, are often seen primarily *as a method to shield officers and owners from personal liability for business debts. Because debts owed the government; for example taxes, unemployment and workers compensation; would impair the public ·coffers if not ˙paid by the corporations, such debts have been made personal obligations of the corporate officers to increase the chances that they will be paid. These liability provisions are very effective. Frequently, corporations will find some way to pay their workers compensation bill when the corporate officers are informed that they will be held personally liable for the debt if not paid by the corporation.* Testimony by Robert W. Morris, Assistant Attorney General for the North Dakota Workers Compensation Bureau, on House Bill No. 1329 before the House Industry, Business and Labor Committee on January 23, 1995. Thus, an officer with a sufficient ownership in the corporation is charged with a duty to "find some way to pay their workers compensation bill" during his period of control because that debt "would impair the public coffers if not paid. . . ."

1991 "must be considered earned" from Raboin to calculate his personal liability.

[¶ 32] Unfortunately, the majority opinion ignores subsection 2, and instead uses the dates of default to focus solely on a single phrase in subsection 1.[3] The majority narrowly interprets that single phrase without considering the whole statute and without following our usual rules of statutory interpretation. "The entire statute is intended to be effective." N.D.C.C. 1–02–38. Statutes must be construed as a whole to identify the intent of the legislature by comparing every section as part of a whole. *Johnson v. North Dakota Workers' Compensation Bureau*, 484 N.W.2d 292, 295 (N.D.1992). Each word, phrase, clause and sentence of a statute should be given meaning and effect. *Matter of Estate of Opatz*, 554 N.W.2d 813, 815 (N.D.1996). As these precedents illustrate, both the statute's connection with other related sections and the consequences of a particular construction should be considered.

[¶ 33] The majority incorrectly focuses on dates when premiums became past due, not when wages were paid. The majority ignores the fiduciary responsibility to provide for payment of premiums as they accrue. The majority thus assigns no meaning to the explicit declaration in subsection 2 that "all wages paid by the corporation must be considered earned from the person determined to be personally liable."

[¶ 34] Raboin founded Classics and acted as its president until just shortly before its closing on November 21, 1991. He qualifies in every respect as an officer personally liable. The company was subject to his control, supervision, and responsibility during the time wages were paid and premiums accrued.

When Raboin was bumped as president on October 7, 1991, the business was in such poor shape that it could not pay debts as they fell due in the following weeks. This disastrous course came about under Raboin's captaincy. In my opinion, Raboin is liable for a just share of premiums during his control, including the penalties and interest accrued thereafter for that proportion.

[¶ 35] For these reasons, I would affirm Raboin's personal liability. Therefore, I respectfully dissent.

[¶ 36] MARING, J., concurs.

---

**3.** I have a great deal of difficulty, too, understanding the majority's awkward analysis of due dates and default dates. N.D.C.C. 65–04–19 (1991) requires the Bureau to "determine the amount of premium due from every employer ... for the twelve months next succeeding the date of expiration of a previous period of insurance.... The bureau then shall order such premium to be paid into the fund...." While deferred payments are authorized, "[i]nterest must be charged at the same rate per annum as earned by the investment of the fund.... Such rate *must* be charged on all premiums deferred under the provisions of this section, and upon default in payment of any installment such installment shall carry penalties as provided in this

chapter." N.D.C.C. 65–04–20 (1991). *See also* NDAC 92–01–02–23 (effective November 1, 1991). Liability for premiums clearly accrues as employees work and are paid, not some later deferred payment date.

Moreover, "[t]o protect the lives, safety, and well-being of wage workers, to ensure fair and equitable contributions to the state workers' compensation insurance fund between all employers, and to protect the workers' compensation fund," the Bureau "may institute injunction proceedings" "[w]hen the employer defaults in the payment of insurance premiums into the state fund." N.D.C.C. 65–04–27.1 (1991). Thus, as they accrue, provision for payment of premiums on wages is intended.