1998 ND 165

Ray KADLEC, Petitioner and Appellee,

v.

**GREENDALE TOWNSHIP BOARD OF TOWNSHIP SUPERVISORS, Respondent and Appellee.**

**Richland County Water Board, Richland County North Dakota, Respondent and Appellant.**

Civil No. 970359.

Supreme Court of North Dakota.

Sept. 15, 1998.

Joseph J. Cichy, of Olson Cichy, Bismarck, for petitioner and appellee.

Steven J. Lies, of Lies & Bullis, Wahpeton, for respondent and appellee.

Duane R. Breitling, of Ohnstad Twichell, Fargo, for respondent and appellant.

MESCHKE, Justice.

[¶ 1] The Richland County Water Resource District (District)[1] appealed a judgment granting Ray Kadlec a writ of mandamus directing the Board of Supervisors of Greendale Township (Township) to install a culvert through a road adjacent to Kadlec's land. We conclude the trial court did not abuse its discretion in granting the writ and, therefore, we affirm.

I

[¶ 2] Kadlec owns land in South Dakota located directly south of the North and South Dakota state line. Robert Vellenga owns the land north of and adjacent to the Kadlec property in Greendale Township, Richland County, North Dakota. Between the Kadlec and Vellenga properties is a Greendale Township road running in an east-west direction that has existed since the 1960s. The road is commonly dubbed the "State Line Road" even though it is located in North Dakota. A slough is located on the Kadlec property next to and south of the State Line Road.

[¶ 3] There is no artificial drainage into the Kadlec slough but, during wet years, the slough overflows and runs north to State Line Road at a point across from the Vellenga property. State Line Road dams and retains the water on the Kadlec property and, during periods of extreme overflow, the accumulating water runs westward onto property owned by others. In 1995 and 1997, the water overflowing from the slough washed out a portion of the State Line Road 33 feet long, 14 feet across, and 4 feet deep.

[¶ 4] In April 1995, Kadlec petitioned the District for placement of a culvert under the State Line Road. After initially denying the request, the District amended its decision and authorized Kadlec to ditch eastward on the south side of the State Line Road to an existing culvert. In May 1995, Kadlec, along with the Township and others, petitioned the District for placement of a culvert under the State Line Road. The District denied the petition.

[¶ 5] In February 1997, Kadlec again petitioned the District for authorization to place a culvert under the State Line Road. However, the District deferred acting on the petition "until the natural [sic] has been cleaned and work is done on Dr. # 3 to improve the drain so it can handle the water." The District had no plan or time frame for working on Drain No. 3, the prerequisite it set before it would consider authorizing the culvert. Kadlec withdrew the petition.

[¶ 6] In August 1997, Kadlec sued the Township for an alternative writ of mandamus to compel the Township to install the culvert under the State Line Road. At the urging of the trial court, the parties stipulated to adding the District as a party-respondent to the action. The court further directed that copies of relevant documents be served on Vellenga, the downstream landowner of the property the water would first flow over if the culvert was installed.

[¶ 7] After a hearing, the trial court found Kadlec had no plain, speedy and adequate remedy in the ordinary course of law, and ruled Kadlec, under N.D.C.C. § 24–03–06, had a "legal entitlement to the installation of the culvert as the roadway cannot be allowed to act as a dam or dike and water must be allowed to follow its natural and ordinary course." The court found no potential public injury would be caused by the culvert's installation, and that it would be "beneficial for the travel[ ]ing public." The court granted the writ of mandamus, directing the Township

> to install an appropriately sized and placed culvert in the roadway between the Kadlec and [Vellenga] properties on or before November 21, 1997. The Township Board shall consult with the Water Board regarding the size and placement of the culvert and that that consultation must be completed by Friday, November 7, 1997, at

1. Although the District has been identified in the caption of this case as the Richland County Wa-

ter Board, we use the correct title, District, as did the parties in their briefs.

5:00 p.m., after which time the Township has the authority to place the culvert unless both sides agree that the consultation shall be extended subject to the November 21, 1997, deadline. The Township Board has the ultimate authority regarding the sizing and placing of the culvert.

Only the District has appealed.

## II

[¶ 8] Under N.D.C.C. § 32–34–01, a trial court may issue a writ of mandamus to "any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station." An applicant for a writ of mandamus must demonstrate a clear legal right to the performance of the act and must have no other plain, speedy and adequate remedy in the ordinary course of law. *Old Broadway Corp. v. Backes*, 450 N.W.2d 734, 736 (N.D.1990). The issuance of a writ of mandamus is left to the sound discretion of the trial court, and we will not reverse the court unless, as a matter of law, the writ should not issue or the court abused its discretion. *Krabseth v. Moore*, 1997 ND 224, ¶ 6, 571 N.W.2d 146. As we have often explained, as in *Gowin v. Trangsrud*, 1997 ND 226, ¶ 8, 571 N.W.2d 824, a court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process.

[¶ 9] We reject the District's argument that summary judgment standards under N.D.R.Civ.P. 56 should be applied in our review of the trial court's decision. The court invited the parties to submit evidence at the hearing, but they all said they had no dispute with factual assertions made in the affidavits, attachments, and exhibits already presented to the court. Because there were no factual disputes, the court treated all factual assertions in the affidavits and attachments as "the factual findings for this mandamus proceeding." The clearly erroneous standard under N.D.R.Civ.P. 52(a) applies to a trial court's findings of fact made from undisputed or documentary evidence. *See Stracka v. Peterson*, 377 N.W.2d 580, 582 (N.D.1985). We apply the clearly erroneous standard in reviewing the court's factual findings in this case.

## A

[¶ 10] The trial court ruled the Township had the legal authority to decide whether the culvert should be installed under the State Line Road. The District baldly asserts, in a footnote in its brief and without any legal analysis at all, that it has sole authority to allow or disallow installation of the culvert in this case. The District claims resolution of this authority issue is not necessary because Kadlec failed to meet the requirements for obtaining a writ of mandamus. We disagree with the District's peculiar position that resolution of the authority issue is unnecessary. This case hinges upon who has authority over installation of the culvert.

[¶ 11] Several times in the past, this Court has ruled the board of township supervisors has the authority to install culverts in township roads when necessary to preserve a natural drainway for surface waters. *See Lemer v. Koble*, 86 N.W.2d 44, 47–48 (N.D. 1957); *Viestenz v. Arthur Tp.*, 78 N.D. 1029, 1034, 54 N.W.2d 572, 575 (1952); *see also Olson v. Cass County*, 253 N.W.2d 179, 183 (N.D.1977). The District's position seems to be that later legislation amending statutes for water resource districts has made these cases obsolete.

[¶ 12] The statutory powers of the Township and the District are found in N.D.C.C. Titles 24 and 61, respectively. Statutory interpretation is a question of law fully reviewable on appeal. *Heck v. Reed*, 529 N.W.2d 155, 160 (N.D.1995). The primary goal in construing statutes is to ascertain the legislature's intent. *Northern X–Ray Co. v. State*, 542 N.W.2d 733, 735 (N.D.1996). In ascertaining legislative intent, we first look to the language of the statute, giving the language its plain, ordinary meaning. *Raboin v. North Dakota Workers Compensation Bureau*, 1997 ND 221, ¶ 17, 571 N.W.2d 833. As we said in *Interest of K.G.*, 551 N.W.2d 554, 556 (N.D.1996), we interpret statutes in context, endeavoring to give meaningful effect to each statute on the same subject without making one or the other useless.

[¶ 13] The board of supervisors of any township in the state has general supervision over the roads, highways, and bridges throughout the township. N.D.C.C. § 24–06–01. "Supervise" means "to coordinate, direct, and inspect continuously and at first hand the accomplishment of," and to "oversee with the powers of direction and decision the implementation of one's own or another's intentions." *Webster's Third New International Dictionary*, at p. 2296 (1971). Section 24–03–06, N.D.C.C., imposes upon a board of township supervisors a duty to not construct or reconstruct a road in a way that blocks a natural watercourse:

Any and all highways of any kind hereafter constructed or reconstructed by the department, any board of county commissioners, any board of township supervisors, their contractors, subcontractors or agents, or by any individual firm, corporation, or limited liability company must be so designed as to permit the waters running into such ditches to drain into coulees, rivers, and lakes according to the surface and terrain where such highway or highways are constructed in accordance with scientific highway construction and engineering so as to avoid the waters flowing into and accumulating in the ditches to overflow adjacent and adjoining lands. In the construction of highways, as herein provided, the natural flow and drainage of surface waters may not be obstructed, but such water must be permitted to follow the natural course according to the surface and terrain of the particular terrain.

Still, the township does not act in a void.

[¶ 14] When construction, reconstruction, or insertion of a culvert in a township road will increase surface water flow in other townships, the township must give notice to the other affected townships. *See* N.D.C.C. § 24–06–26.1. A township also has authority to construct and maintain ditches along roadways. *See* N.D.C.C. §§ 24–06–11, 24–06–26, and 24–06–26.1. If a board of township supervisors denies permission to maintain a ditch, the petitioner may appeal that decision to the water resource board that has jurisdiction over the ditch. *See* N.D.C.C. § 24–06–26.3. However, a water resource board is given no appeal authority when a township proposes to install a culvert.

Whenever a county or township plans to construct or reconstruct a bridge, install or modify a culvert, or construct or reconstruct a drain in connection with a roadway or railway, the county or township shall provide notice in any way to the water resource board of the water resource district in which is located the bridge, culvert, or drain. This notice must be given at least thirty days prior to the date construction or reconstruction is to begin. The water resource board may submit comments concerning the construction or reconstruction to the appropriate officials of the county or township. This section does not apply in times of emergency, unexpected events, or acts of God.

N.D.C.C. § 24–06–34. Although this section allows a water resource board to advise the township, the statute does not give the water resource board any decision-making authority to control the process.

[¶ 15] A water resource district is given power to

[c]oordinate proposals for installation, modification, or construction of culverts and bridges in an effort to achieve appropriate sizing and maximum consistency of road openings. The department of transportation, railroads, counties, and townships shall cooperate with the districts in this effort. Each district shall also consider the possibility of incorporating appropriate water control structures, where appropriate, as a part of such road openings.

N.D.C.C. § 61–16.1–09(21). The words "coordinate" and "cooperate" denote working together toward a common end, *Webster's Third New International Dictionary*, at p. 501 (1971), and do not connote the level of control included in "supervision." While water resource districts have been given broad powers to control waters within their jurisdictions, *see* N.D.C.C. § 61–16.1–09(5–7) and (16), they have not been given authority to make the decision to install a culvert under a township road in a natural watercourse. Rather, water resource districts have the authority to direct a township to install a culvert to accommodate a drain. *See*

N.D.C.C. §§ 61–16.1–42 and 61–21–31. *Compare* N.D.C.C. §§ 61–16.1–47 and 61–21–42 (excluding township drains from authority of a water resource district). It is undisputed in this case that no existing drain is involved.

[¶ 16] Construing the statutes together, we reaffirm prior precedents and conclude that the Township, and not the District, has the supervisory authority to decide whether to put a culvert in the State Line Road.

### B

[¶ 17] An applicant for a writ of mandamus must first demonstrate a clear legal right to the performance of an act that the law specifically enjoins as a duty. *See* N.D.C.C. § 32–34–01. Kadlec asserts N.D.C.C. § 24–03–06 imposes on the township a duty to install a culvert to prevent obstruction of the natural drainage of surface water. We agree.

[¶ 18] That the owner of the lower, or servient, estate must receive surface water from the upper or dominant estate in its natural flow is a well established principle in this jurisdiction. *See Jones v. Boeing Company,* 153 N.W.2d 897, 903 (N.D.1967); *Rynestad v. Clemetson,* 133 N.W.2d 559, 563 (N.D.1965). Neither the owner of the upper land nor the owner of the lower land may interfere with the natural drainage so as to injure the rights of the other. *See Nilson v. Markestad,* 353 N.W.2d 312, 315 (N.D.1984); *Lemer,* 86 N.W.2d at 45, Syllabus 1. Long ago, this Court construed the forerunner of N.D.C.C. § 24–03–06 as imposing a mandatory duty upon township supervisors to provide drainage for any water that might accumulate in ditches along roadways so as to prevent the water from overflowing onto adjoining lands, and held that the township supervisors could be compelled to comply with this mandate.

> By this law those in charge of the construction of highways in addition to making the roads fit for travel must consider the drainage affected by the construction. It is made their mandatory duty to provide drainage towards a natural water course of any water which may accumulate in the ditches along the highway.
>
> Under this law the highways involved in the instant case were constructed. The question then is whether the board of supervisors in carrying out that work complied with the provisions of this law. If they failed in that respect and obstructed the natural flow of surface waters thereby causing plaintiffs irreparable damage for which they have no adequate remedy at law, their actions, in violation of that law, may be enjoined.

*Viestenz,* 78 N.D. at 1034–35, 54 N.W.2d at 575. The statute and its prior construction by this Court make it clear that the Township has a duty to maintain its roads so they do not impede the natural flow of water.

[¶ 19] The District asserts N.D.C.C. § 24–03–06 was violated because no evidence was presented to the trial court establishing a culvert under the State Line Road would comply with scientific highway construction and engineering methods. Although no scientific and engineering data about placement of the culvert were presented at trial, we do not believe this precluded the court from finding the Township had a clear legal duty to install the culvert.

[¶ 20] The trial court ordered the Township "to install an appropriately sized and placed culvert in the roadway." This directive contemplates the development of sufficient engineering data before the culvert is actually installed. This evidence was not necessary before the court could find a clear legal duty on the part of the Township to install a culvert.

[¶ 21] The evidence in the record establishes when water from Kadlec slough overflows, it naturally flows north and would continue to flow north but for the State Line Road.[2] It is undisputed there is no contrib-

---

2. The District asserts the trial court incorrectly found the State Line Road acted as an obstruction to the natural flow and drainage of surface waters. The District claims the natural drainage patterns have been altered through the years because of the "prescriptive" nature of the road, and the natural flow of water is not through the roadway at the point Kadlec requested installation of the culvert, but is along the roadside ditches. The District did not raise this argument

uting artificial drainage and the water is natural surface run-off that has not been concentrated or increased in volume from its natural condition. We conclude the trial court did not err in finding the Township has a clear legal duty to install the culvert.

### C

■ [¶ 22] An applicant for a writ of mandamus must also demonstrate there is no other plain, speedy and adequate remedy in the ordinary course of law. *See* N.D.C.C. § 32–34–01. This Court has held mandamus is not available if the applicant has failed to pursue and exhaust appeal rights associated with any available administrative remedies. *See, e.g., Tooley v. Alm,* 515 N.W.2d 137, 140 (N.D.1994); *Olson,* 253 N.W.2d at 182. The District asserts Kadlec was not entitled to mandamus because he failed to pursue administrative appeal of the District's 1995 decision to not authorize a culvert and failed to pursue administrative remedies "allegedly" available to him from the Township. Under the peculiar circumstances of this case, we disagree.

[¶ 23] While N.D.C.C. § 61–16.1–54 allows for appeals from decisions of a water resource district, we do not believe this appeal procedure gave Kadlec a plain, speedy and adequate remedy. The record is replete with instances of Kadlec and the Township, while continuously stressing their position that the culvert should be installed, being constantly met with the District's insistence that the District had the sole legal authority to determine whether the culvert should be installed. The District informed the Township that the District held the authority, and the District's position was reinforced by the Richland County Board of Commissioners (Commissioners) when they referred the Township back to the District when the Township sought the Commissioners' assistance. Efforts by Kadlec and the Township to install the culvert during necessary road repairs were simply overridden by the District, even though it did not have controlling authority over that decision. *Compare* 52

for an easement by prescription in the trial court. Issues not raised in the trial court cannot be raised for the first time on appeal. *See, e.g.,*

Am.Jur.2d *Mandamus* § 37 (1970) (mandamus will not be granted to compel performance of an act where performance would exceed respondent's legal authority). Kadlec's right to appeal from the District's 1995 denial of his request for installation of the culvert cannot be considered a plain, speedy and adequate remedy in the ordinary course of law when the District did not have any authority to make that decision.

[¶ 24] The District's claim an adequate remedy existed because Kadlec should have, but did not, petition the Township to install the culvert and appeal from any possible adverse decision under N.D.C.C. § 58–03–15, is equally unavailing. The District relies on *Olson,* 253 N.W.2d at 182–83, where this Court held downstream landowners, who failed to convince a board of county commissioners to not install a culvert and did not appeal that decision under N.D.C.C. § 11–11–39, were not entitled to injunctive relief prohibiting installation of the culvert. However, the downstream landowners in *Olson* were not faced with an entity claiming and exercising authority, but actually without authority, to make the culvert decision. Moreover, the Township has not complained about Kadlec failing to exhaust its procedures, and does not contest the writ of mandamus to it on this appeal.

[¶ 25] The exhaustion of remedies doctrine has several well-recognized exceptions. *See Lende v. Workers' Compensation Bureau,* 1997 ND 178, ¶ 23, 568 N.W.2d 755. In *Shark Brothers, Inc. v. Cass County,* 256 N.W.2d 701, 705 (N.D.1977), we explained whether "exhaustion of remedies" applies in each case depends on a mixed bundle of considerations, "including, but not limited to, expertise of administrative bodies, statutory interpretation, pure questions of law, constitutional issues, discretionary authority of the courts, primary, concurrent, or exclusive jurisdiction, inadequacies of administrative bodies, etc." Thus, if exhaustion would be futile, *see Tracy v. Central Cass Public School,* 1998 ND 12, ¶ 13, 574 N.W.2d 781, or if a case involves only the interpretation of an

*Cermak v. Cermak,* 1997 ND 187, ¶ 15, 569 N.W.2d 280. We therefore refuse to decide this question.

unambiguous statute, *see Medcenter One v. North Dakota State Board of Pharmacy*, 1997 ND 54, ¶ 21, 561 N.W.2d 634, exhaustion is not required.

[¶ 26] Requiring Kadlec to apply to the Township for installation of the culvert would not result in a plain, speedy or adequate remedy as long as the District persisted in asserting it had sole authority, because the District would override the Township decision. Unfortunately, the Township was apparently uncertain about its clear legal authority. Kadlec and the Township have been confronting this dilemma for more than two years without progress, and it appears the deadlock would only have continued. Indeed, the District to this day continues to claim sole authority over installation of the culvert, yet it even sought to have us avoid deciding that issue in this appeal. This gamesmanship must end.

[¶ 27] We conclude the trial court correctly held Kadlec had no plain, speedy and adequate remedy in the ordinary course of law.

D

[¶ 28] Even if an applicant shows a clear legal right making mandamus an appropriate remedy and if, without the writ, the applicant would be without a remedy, a court may still deny the writ if its issuance would injuriously affect the public. *See Fargo Ed. Ass'n v. Paulsen*, 239 N.W.2d 842, 849 (N.D. 1976). The District claims the writ should have been denied because installation of the culvert would lead to additional flooding in North Dakota.

[¶ 29] The trial court specifically found "there was no showing of any potential public injury by the installation of the culvert and, in fact, the culvert will be beneficial for the travel[ ]ing public." The District relied on a regional engineering study indicating that increased uncontrolled drainage would increase flooding in the area. However, the court found the report "too conclusory for me to consider . . . you have not given me anything specific." The court concluded that putting a culvert in the road to allow a steady, even flow of water would be less injurious than allowing acres of water to pond behind the road, eventually breach the road, and escape in a gully-washing torrent of water.

[¶ 30] The District's argument is really a plea for the exclusive authority to manage and control all the surface waters in its watershed jurisdiction. The Legislature, however, has not chosen to give water resource districts this plenary power. The District's plea should be made to the Legislature.

[¶ 31] We affirm the trial court's finding that the culvert, rather than being harmful, will be beneficial to the public.

III

[¶ 32] We conclude the trial court did not abuse its discretion in granting the writ of mandamus. We therefore affirm the judgment.

[¶ 33] MARING and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring in result.

[¶ 34] I agree with the result reached by the majority opinion. I write separately as to part II C of the majority opinion concerning exhaustion of remedies. It seems to me it is precisely when a party is forced with the Water District's "insistence that the District had the sole legal authority to determine whether the culvert should be installed" and the party's efforts were "simply overridden by the District" that an appeal should be taken. The majority also excuses Kadlec's failure to petition the Township to install the culvert as required in *Olson v. Cass County*, 253 N.W.2d 179 (N.D.1977), because in *Olson* the landowners "were not faced with an entity claiming and exercising authority, but actually without authority, to make the culvert decision." It is apparent that had Kadlec taken an appeal from the District decision in 1995 or petitioned the Township, or both appealed and petitioned at that time, his remedy would not only have been plain, but more speedy and adequate than the petition for mandamus finally filed in 1997 and only now being finally determined.

[¶ 35] I do not believe that in applying the exhaustion-of-remedies doctrine the failure to take an appeal is excused because of the

obfuscation of the other party. Although I do not read the majority opinion as so holding, I am concerned it may be read in that light by parties who, deterred in one cause of action, simply drop that cause to pursue another avenue. We have been faced with arguments in the past that exhaustion by way of appeal should not be required for a variety of reasons, but: "Our decisions have [ ] consistently required exhaustion of remedies before the appropriate administrative agency as a prerequisite to making a claim in court." *Thompson v. Peterson,* 546 N.W.2d 856, 861 (N.D.1996), and "Unless exhaustion would be futile, when appellate processes are available and the remedies will provide adequate relief—whether they be internal or external—those remedies must be exhausted before seeking judicial remedies." *Tracy v. Central Cass Public School,* 1998 ND 12, ¶ 13, 574 N.W.2d 781.

[¶ 36] Notwithstanding my concerns, I agree with the majority that the circumstances of this case are peculiar enough to create an exception to the exhaustion doctrine. Those circumstances include the fact the District was not the entity with the authority to grant relief and the fact that the Township, the entity with the authority, does not complain about Kadlec's failure to exhaust administrative remedies and does not contest the writ of mandamus. *Cf. Nagel v. Emmons County Water Resource D.,* 474 N.W.2d 46 (N.D.1991) (in action for injunction, Water Resource District dismissed from action by trial court; county obtained flowage easement by prescription caused by change in natural drainage during road construction).

[¶ 37] SANDSTROM, J., concurs.