1999 ND 220

**Lloyd T. HUBER and Emma Huber, Plaintiffs and Appellants,**

v.

**OLIVER COUNTY, Defendant and Appellee.**

**No. 990093.**

Supreme Court of North Dakota.

Dec. 1, 1999.

---

Albert A. Wolf, Wheeler Wolf, Bismarck, ND, for plaintiffs and appellants.

Charles S. Miller, Jr., Fleck, Mather & Strutz, Bismarck, ND, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Lloyd and Emma Huber appealed from a judgment and post-judgment order dismissing their action against Oliver County for damages and injunctive relief related to the flooding of their farmland. We conclude the trial court did not err in instructing the jury on the County's act-of-God defense, and did not abuse its discretion in denying the Hubers injunctive relief or in awarding the County costs and disbursements. We affirm.

I

[¶ 2] The Hubers have owned a family farm in Oliver County since 1955, and have raised crops and livestock there with other family members. Otter Creek meanders on and off the Hubers' land, providing them with water for their livestock and irrigation opportunities for 40 acres of land adjacent to the creek. During the 1950s, Oliver County voters approved a plan to build a federal-aid farm-to-market road on the Hubers' land. In 1961, after the County failed in its attempt to move the road's location, *see Huber v. Miller,* 101 N.W.2d 136 (N.D.1960), the County and the Hubers entered into a contract granting the County a provisional qualified easement across the Hubers' land to construct the road. By building the road on the Hubers' property, the County could save expenses because crossings over Otter Creek would be limited to two, one at each end of a small oxbow in the creek. The contract called for installation of two culverts and a concrete barrier intended to force normal flows of water to continue along the oxbow. The contract also provided if the culverts and barrier were insufficient to keep the creek flowing in its natural course, the County would install another means of accomplishing this purpose at its own expense.

[¶ 3] The County built the road and installed the culverts and barrier system, but the system soon failed. The concrete barrier washed out and the water established its own channel down the west side of the road rather than crossing under the road and through the oxbow on the Hubers' land. Although the County installed rock in an attempt to keep the creek flowing in its natural course, the County was not successful in getting the water to flow through the oxbow on the Hubers' land.

[¶ 4] In 1989 the Hubers sued Oliver County alleging breach of the 1961 easement contract and seeking damages as well as specific performance. The trial court denied the Hubers' request for specific performance and granted summary judgment dismissal of the breach of contract action, ruling it was barred by the statute of limitations. In *Huber v. Oliver County,* 529 N.W.2d 179 (N.D.1995), this Court affirmed the denial of the Hubers' claim for specific performance because they had not shown their remedy at law

through an action for damages was inadequate, but reversed and remanded for trial on the statute of limitations issue.

[¶ 5] After experiencing flood problems, the Hubers brought this action in 1996 seeking damages for the County's failure to construct a sufficient culvert system under the roadway to allow water to flow in its natural course onto and off their land as it had before the road was constructed. They alleged because of the insufficient culvert system, their farmstead received flood damage after a heavy summer rain in 1993 and after a heavy spring runoff in 1996. They also sought injunctive relief to require the County to install additional culverts to correct the problem so they would not continue to suffer flood damage in the future.

[¶ 6] Trials of the 1989 and the 1996 actions were consolidated. The claim for injunctive relief was tried to the court. Shortly before trial, the County agreed to construct an additional nine-foot culvert in the road, thereby doubling the amount of culvert capacity. The jury returned a verdict in the 1989 lawsuit which resulted in its dismissal because the action was barred by the statute of limitations. In the 1996 action for damages, the jury found the flooding on the Hubers' land was not caused by the County's road construction or culvert installations. The trial court also denied the Hubers' request for injunctive relief, concluding the Hubers have "an adequate remedy at law, and a multiplicity of suits would be unnecessary to address their claims...."

[¶ 7] The Hubers did not challenge the jury's finding on the statute of limitations issue in the 1989 action. However, the Hubers moved for a new trial in the 1996 action, challenging the jury instruction on the County's "act-of-God" defense and the denial of their request for injunctive relief. The Hubers also objected to taxation of costs and disbursements against them. The trial court denied the post-trial motions. The Hubers appealed.

II

[¶ 8] The Hubers contend the trial court's instruction on the County's act-of-God defense was erroneous because it did not adequately inform the jury of the applicable law. The trial court's instruction was based on NDJI–Civil 460, and provided:

Oliver County claims that the flooding in 1993 followed the second big rainfall event of that summer. Therefore, Oliver County contends, the flooding was proximately caused by "Acts of God" in the form of unprecedented and extraordinary rainfalls.

A rainfall that occurs seasonably and which is not of unprecedented magnitude should be regarded as ordinary and not an "Act of God." A helpful test of the character of a rainfall as ordinary, rather than extraordinary, is whether its occurrence and magnitude might reasonably have been anticipated, in the light of the known rainfall experience in the area.

Whether the rainfalls were unprecedented and extraordinary, and therefore "Acts of God," is a question of fact you must decide. If you find there were unprecedented and extraordinary rainfalls ("Acts of God") and that the injury, if any, suffered by the Hubers would have been suffered by reason of those "Acts of God" regardless of any acts of Oliver County, then Oliver County is not liable for such injury.

Oliver County has the burden of proving this "Act of God" defense.

[¶ 9] This Court has held to prevail on the act-of-God defense, the defendant must establish the act of God was the sole proximate cause of the damage, and if the act of God and the fault or negligence of the defendant combine to produce the injury, the defendant is still liable. *See, e.g., North Shore, Inc. v. Wakefield,* 542 N.W.2d 725, 729 (N.D.1996); *Lang v. Wonnenberg,* 455 N.W.2d 832, 836 (N.D. 1990); *Hoge v. Burleigh County Water*

*Management Dist.*, 311 N.W.2d 23, 29 (N.D.1981); *Dempsey v. City of Souris*, 279 N.W.2d 418, 420 (N.D.1979); *Frank v. County of Mercer*, 186 N.W.2d 439, 443 (N.D.1971). The Hubers argue the trial court's failure to instruct the jury the act of God must have been the "sole" proximate cause of the damage to their land for the County to escape liability requires a new trial in this case because they presented evidence the County's negligence in constructing the culvert system contributed to their damages.

[¶ 10] Jury instructions must fairly and adequately inform the jury of the applicable law. *Olson v. Griggs County*, 491 N.W.2d 725, 729 (N.D.1992). A trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of the applicable law. *Barnes v. Mitzel Builders, Inc.*, 526 N.W.2d 244, 247 (N.D.1995). On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient. *Schuhmacher v. North Dakota Hospital Association*, 528 N.W.2d 374, 377 (N.D.1995).

[¶ 11] Here, although the Hubers objected to the instruction, they did not specifically request the phrase "sole proximate cause" be used in the instruction. Moreover, the trial court instructed the jury the rainfalls had to be of such magnitude that the Hubers' damages "would have been suffered ... regardless of any acts of Oliver County...." This is synonymous with stating the act of God must have been the sole proximate cause of the Hubers' damages. *See Frank*, 186 N.W.2d at 446. We conclude the trial court's instructions adequately informed the jury of the applicable law.

## III

[¶ 12] The Hubers contend the trial court erred in refusing to grant their request for injunctive relief requiring the County to install more than the one additional nine-foot culvert which the County agreed to install to alleviate further flood damage to their land in the future.

[¶ 13] The Hubers' argument is premised on N.D.C.C. §§ 24–03–06 and 24–03–08, which provided at the relevant time:

*24–03–06. Method of construction of highway ditches.* Any and all highways of any kind hereafter constructed or reconstructed by the department, any board of county commissioners, any board of township supervisors, their contractors, subcontractors or agents, or by any individual firm or corporation, must be so designed as to permit the waters running into such ditches to drain into coulees, rivers, and lakes according to the surface and terrain where such highway or highways are constructed in accordance with scientific highway construction and engineering so as to avoid the waters flowing into and accumulating in the ditches to overflow adjacent and adjoining lands. In the construction of highways, as herein provided, the natural flow and drainage of surface waters may not be obstructed, but such water must be permitted to follow the natural course according to the surface and terrain of the particular terrain.

*24–03–08. Determinations of surface water flow and appropriate highway construction.* Whenever and wherever a highway under the supervision, control, and jurisdiction of the department or under the supervision, control, and jurisdiction of the board of county commissioners of any county has been or will be constructed over a watercourse or draw into which flow surface waters from farmlands, the state water commission, upon petition of the majority of landowners of the area affected, shall determine as nearly as practicable the maximum quantity of water, in terms of second feet, which such watercourse or draw may be required to carry. When such determination has been made by the state water commission, it is the

duty of the department or the board of county commissioners, as the case may be, upon notification of such determination, to install a culvert or bridge of sufficient capacity to permit such maximum quantity of water to flow freely and unimpeded through such culvert or under such bridge.[1]

[¶ 14] The Hubers argue these statutes imposed upon the County an absolute duty to refrain from obstructing the flow of Otter Creek with the roads it builds, and to provide drainage for *any* amount of water which may accumulate in ditches along the roadway so as to prevent water from overflowing and flooding their lands. Although the County agreed before trial to construct one additional nine-foot culvert to attempt to alleviate any problems, the Hubers contend their evidence established at least a third nine-foot culvert would need to be installed.

[¶ 15] This Court has consistently interpreted N.D.C.C. § 24–03–06 and related statutes as imposing upon a township a mandatory duty to not construct or reconstruct township roads in a way that obstructs the natural flow and drainage of surface waters. *See Ness v. Ward County Water Resource Dist.*, 1998 ND 191, ¶ 14, 585 N.W.2d 793; *Kadlec v. Greendale Tp. Bd. of Tp. Supervisors*, 1998 ND 165, ¶ 18, 583 N.W.2d 817; *Viestenz v. Arthur Township*, 129 N.W.2d 33, 39–40 (N.D.1964); *Lemer v. Koble*, 86 N.W.2d 44, 47–48 (N.D. 1957); *Viestenz v. Arthur Township*, 78 N.D. 1029, 1033–34, 54 N.W.2d 572, 575 (1952). In *Ness*, 1998 ND 191, ¶ 14, 585 N.W.2d 793, we explained:

> [W]hen a township road is constructed or reconstructed, N.D.C.C. § 24–03–06 imposes three obligations on the township board of supervisors: 1) the natural flow and drainage of surface waters must be permitted to follow the natural drainage pattern according to the natural terrain of the land, *Kadlec*, 1998 ND 165 at ¶ 18, 583 N.W.2d 817; 2) drainage must be provided for any water that might accumulate in ditches along roadways in order to prevent overflowing onto adjoining lands; *id.;* and 3) the best method of finding the natural outlet for the surface waters "must be determined by the township board in accordance with good engineering practices." *Viestenz*, 129 N.W.2d at 34 (citations omitted).

(Footnote omitted). While the township has a duty to not obstruct the natural flow and drainage of surface waters, the statutes are silent, and this Court has not directly addressed, whether that duty entails insuring that the flow and drainage

---

1. Effective August 1, 1999, the legislature amended N.D.C.C. §§ 24–03–06 and 24–03–08. Section 24–03–06, N.D.C.C., was amended to replace the requirement that highways be constructed in accordance with "scientific highway construction and engineering," with the phrase "the stream crossing standards prepared by the department and the state engineer...." 1999 N.D. Sess. Laws ch. 248, § 1. It was also amended to provide "[i]n the construction of highways the natural flow and drainage of surface waters *to the extent required to meet the stream crossing standards prepared by the department and the state engineer* may not be obstructed...." (Amended language emphasized). *Id.* The statute was further amended to provide:

   The department, county, township, their contractors, subcontractors, or agents, or any individual firm, corporation, or limited liability company is not liable for any damage caused to any structure or property by water detained by the highway at the crossing if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer.

   *Id.*

   Section 24–03–08, N.D.C.C., was amended in part to delete reference to the "maximum quantity of water, in terms of second feet, which such watercourse or draw may be required to carry," with the phrase "design discharge that the crossing is required to carry to meet the stream crossing standards prepared by the department and the state engineer." 1999 N.D. Sess. Laws ch. 248, § 2. It was also amended to provide there is no liability for damage caused by water "if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer." *Id.*

not be obstructed under any conceivable set of circumstances.

[¶ 16] Because N.D.C.C. § 24–03–08 speaks in terms of installing culverts of sufficient capacity to permit what is determined to be the "maximum quantity of water" the watercourse "may be required to carry," the Hubers essentially argue the culvert capacity must be sufficient to withstand any type of flood event, including an act-of-God event. However, we construe statutes as a whole to determine legislative intent, *see* N.D.C.C. §§ 1–02–07 and 1–02–38(2), and we do not construe statutes to produce absurd or ludicrous results. *See Singha v. State Board of Medical Examiners,* 1998 ND 42, ¶ 16, 574 N.W.2d 838. Rather, statutes are to be construed in a practical manner. *State v. Hagge,* 211 N.W.2d 395, 397 (N.D.1973). Under the Hubers' interpretation, the state and its political subdivisions would be required to maintain the natural flow of water, even for purposes of a 500 year flood event, and be required to install costly drainage structures to maintain natural flows for every conceivable runoff event. We reject this unreasonable and impractical construction of the statutes.

[¶ 17] This Court has recognized political subdivisions are "not under a duty to furnish *perfect* drainage." *Little v. Burleigh County,* 82 N.W.2d 603, 613 (N.D. 1957) (Emphasis in original). Section 24–03–06, N.D.C.C., makes specific reference to "construct[ion of highways] in accordance with scientific highway construction and engineering...." In *Kadlec,* 1998 ND 165, ¶¶ 19–20, 583 N.W.2d 817, we held a trial court could properly find a township had a clear legal duty to install a culvert, even though issues about its appropriate size and placement in the road, and whether it would comply with scientific highway and construction methods under N.D.C.C. § 24–03–06, remained for resolution. Obviously, it is not practical or feasible to provide drainage structures sufficient to cope with the most cataclysmic of events. We interpret the statutes as imposing an obligation upon the County to maintain the natural flow and drainage of surface waters to the extent established engineering standards or sound engineering design practice would require as prudent under the circumstances.

[¶ 18] In this case, there was evidence the North Dakota Department of Transportation has adopted design standards for stream crossing locations at North Dakota highways and secondary roads based on "Design Flood Frequency." County off-system roads require a structure capable of handling a 15 year flood event. Major county roads and state secondary roads require structures capable of handling a 25 year flood event. Interstate highways, state primary roads and urban streets require structures capable of handling a 50 year flood event. The existing culverts under the roadway across the Hubers' property met the 25 year standard for major county roads.

[¶ 19] The County presented evidence the additional nine-foot culvert it agreed to install would double the culvert capacity and the additional capacity would protect the Hubers' farm buildings from a 100 year flood event. The additional capacity would protect the Hubers' approach road to the farmstead except for a 50 year flood event. The additional capacity would also mean water would not overflow the banks of Otter Creek and cause minor field flooding except for a 25 year flood event.

[¶ 20] The granting or denying of injunctive relief rests within the sound discretion of the trial court, and the court's ruling will not be reversed on appeal unless there has been an abuse of discretion. *KAT Video v. KKCT–FM Radio,* 1998 ND 177, ¶ 20, 584 N.W.2d 844. Generally, to be entitled to injunctive relief, a party must show no adequate remedy at law exists and irreparable injury will result if relief is not granted. *See Olson v. Cass County,* 253 N.W.2d 179, 181 (N.D.1977). Here, the Hubers failed to establish they were damaged by the actions of Oliver

County, presumably because the jury decided any flood damage they suffered was caused by an act of God. This is not a case like *Viestenz,* 78 N.D. at 1040–42, 54 N.W.2d at 578–80, where the plaintiff was entitled to injunctive relief after showing actual substantial damage caused by the township's actions. Under the circumstances, we conclude the trial court did not abuse its discretion in refusing to grant the Hubers' request for injunctive relief requiring the placement of additional culverts in the road.

IV

[¶ 21] The Hubers contend the trial court erred in awarding the County $8,230.96 for its costs and disbursements under N.D.R.Civ.P. 54(e) and N.D.C.C. § 28–26–06. The Hubers argue costs and disbursements should not have been allowed because the County was not the prevailing party, the costs were not detailed and verified, and they should not be required to pay the costs of the County's expert engineer.

[¶ 22] The allowance of costs and disbursements to a prevailing party under N.D.C.C. § 28–26–06 lies within the sound discretion of the trial court, and its decision will be overturned on appeal only if an abuse of discretion is shown. *Earthworks, Inc. v. Sehn,* 553 N.W.2d 490, 495 (N.D.1996). If each party prevails on certain parts of a lawsuit, the trial court need not award costs to either party. *See Liebelt v. Saby,* 279 N.W.2d 881, 888 (N.D. 1979). In this case, the Hubers argue no costs should be awarded to either party, or they should be awarded costs because they were the prevailing party in view of the County's pretrial agreement to install an additional nine-foot culvert in the road. This argument is without merit. The County prevailed in the Hubers' claim for damages in the jury trial. The Hubers also lost in their attempt to obtain injunctive relief requiring the County to install more culvert capacity than what the County had earlier agreed upon. Indeed, the trial court's refusal to grant the Hubers the injunctive relief they sought is one of their major issues in this appeal. The County is the prevailing party in this case.

[¶ 23] The Hubers argue the costs were also not detailed and verified as required by N.D.R.Civ.P. 54(e), because each individual cost was not supported by receipts or sworn to by the County's expert witnesses. However, receipts and personal attestation by witnesses is not required under the rule. *See Taghon v. Kuhn,* 497 N.W.2d 403, 407 (N.D.1993); *Schue v. Jacoby,* 162 N.W.2d 377, 384 (N.D.1968). Moreover, after the Hubers objected, the County submitted an affidavit with attached information supporting the costs identified in the statement of costs. Hubers therefore had full opportunity to challenge the costs for reasonableness.

[¶ 24] The Hubers claim the County should not be allowed to tax the costs of its expert engineer because he allegedly changed his position before trial, thereby increasing the costs of litigation. The amount of fees to be allowed for an expert witness is left to the sound discretion of the trial court, which is in a much better position to determine the reasonableness and necessity of the costs and disbursements sought by the prevailing party. *Vogel v. Pardon,* 444 N.W.2d 348, 353 (N.D.1989). The trial court rejected the Hubers' argument, and they have not convinced us the trial court abused its discretion in doing so.

[¶ 25] We conclude the trial court did not abuse its discretion in awarding the County its costs and disbursements in this case.

V

[¶ 26] In view of our disposition of the issues raised in the Hubers' appeal from the judgment, we cannot say the trial court erred in denying their motion for a new trial. *See Griggs County,* 491 N.W.2d at

732. The judgment and post-judgment order are affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.

