782 N.W.2d 638 (2010)
2010 ND 92
Al SKOGEN, Mike Skogen, and Jason Bonde, Plaintiffs and Appellants
v.
HEMEN TOWNSHIP BOARD OF TOWNSHIP SUPERVISORS, Defendant and Appellee
v.
Torin Swartout and Kevin Swartout, Intervenors and Appellees.
No. 20090301.
Supreme Court of North Dakota.
May 14, 2010.
*640 Joseph J. Cichy, Bismarck, N.D., for plaintiffs and appellants.
Corey J. Quinton, Moorhead, MN, for defendant and appellee Hemen Township Board of Supervisors.
Tami Lyn Norgard, Fargo, N.D., for intervenors and appellees Torin Swartout and Kevin Swartout.
VANDE WALLE, Chief Justice.
[¶ 1] Al and Mike Skogen and their tenant, Jason Bonde, ("Skogens") appealed from a judgment dismissing their complaint against the Hemen Township Board of Township Supervisors for damages from flooding to their farmland and for an order requiring the Board to place a culvert in a township road. We reverse and remand.

I
[¶ 2] The Skogens own and farm land in Hemen Township in Barnes County adjacent to and on the south side of a township road, and Torin and Kevin Swartout own land adjacent to and on the north side of the road. In 2007, Al and Mike Skogen asked the Board to install a culvert in the road to prevent flooding on their land and to facilitate drainage, and their request was considered at a November 1, 2007 township board meeting. In December 2007, the Board denied Al and Mike Skogen's request to install the culvert, and on January 15, 2008, they appealed to the district court, claiming that decision violated N.D.C.C. § 24-03-06. Al and Mike Skogen, the Board, and the Swartouts stipulated on March 4, 2008, to allow the Swartouts to intervene in that appeal. The parties' stipulation stated the "Swartout property is directly across the road from the Skogen property and would be impacted by the installation of any culvert" in the township road. In July 2008, the Board informed the parties that it was unable to transcribe the tape recording of the November 1, 2007 Board meeting for the record in that appeal, and in September 2008, the parties stipulated to dismiss the appeal "without prejudice and on the merits." A judgment was filed on September 29, 2008, dismissing that appeal "without prejudice, on the merits."
[¶ 3] Meanwhile, in a complaint dated March 6, 2008, the Skogens sued the *641 Board, alleging it failed to replace a culvert in the township road when the Board reconstructed the road. The Skogens claimed the township road obstructed the natural north to northeast flow of water in the area in violation of N.D.C.C. § 24-03-06 and caused flooding and damages to their farmland in 2007 and would result in additional damages to their farmland in 2008. The Skogens alleged the State Engineer recommended a culvert for the township road, and they sought damages caused by the flooding and an order requiring the Board to place a culvert in the road.
[¶ 4] The Board answered, denying liability and asserting the Skogens' claims were "barred by all applicable immunities, including, but not limited to, discretionary immunity." The Board acknowledged the Skogens' request for money damages negated any argument that their claims must be dismissed for failure to exhaust administrative remedies and conceded that N.D.C.C. § 58-14-01 authorized the Skogens' claim for damages. The district court granted the Swartouts' motion to intervene in the action, and they answered, alleging the Board had no duty to install a culvert in the township road. The Swartouts disputed that the Board had failed to replace a culvert when the township road was reconstructed. The Swartouts claimed the Skogens had drained wetlands on their property for several years, causing water to build up in an impoundment next to the township road and the Skogens wanted a culvert in the township road to drain the water in that impoundment onto the Swartouts' property. The Swartouts alleged the Skogens' demand for a culvert in the township road was previously litigated and the Skogens had voluntarily dismissed their appeal from the Board's denial of their request for a culvert.
[¶ 5] The district court dismissed the Skogens' complaint, concluding their claim for injunctive relief was not proper because North Dakota law allows an appeal from a township board decision denying placement of a culvert and they had failed to exhaust their administrative remedies. The court said it assumed the prior appeal was dismissed without prejudice because no party raised the issue of res judicata or collateral estoppel. The court also concluded, as a matter of law, N.D.C.C. § 32-12.1-03(3)(c) precluded an action for damages against a political subdivision for refusing to place a culvert in a road. The court subsequently denied the Skogens' motion for reconsideration.

II
[¶ 6] On appeal, the Skogens argue the district court erred in allowing the Swartouts to intervene in this action, which the Skogens claim is not about alleged illegal drainage, but is about an obstruction in a township road and a township's statutory duty to drain surface water through township roads. The Skogens argue the Swartouts' rights may be properly protected in a proceeding before the Barnes County Water Resource District regarding alleged illegal drainage. The Swartouts respond that the district court did not err in granting their motion to intervene to protect their property interest, because the Skogens' claim for relief includes a request for the installation of a culvert in a township road separating the Skogens' land from the Swartouts' land, which is the same issue that was litigated in the Skogens' prior appeal to the district court.
[¶ 7] Rule 24, N.D.R.Civ.P., provides for intervention as a matter of right and for permissive intervention. Under N.D.R.Civ.P. 24(a), a movant may intervene in an action as a matter of right if *642 a statute confers an unconditional right to intervene, or if the movant claims an interest in property that is the subject of the action and the disposition of the action may impair or impede the movant's ability to protect that property interest. In considering whether a party may intervene as a matter of right under N.D.R.Civ.P. 24(a), we review a district court's findings of fact under the clearly erroneous standard of review. Eichhorn v. Waldo Twp. Bd. of Supervisors, 2006 ND 214, ¶ 13, 723 N.W.2d 112. The ultimate question whether a movant has a right to intervene is a question of law and is fully reviewable on appeal. Id. Historically, intervention has been liberally granted in North Dakota. Id.
[¶ 8] Here the district court said the Skogens' claims implicated the Swartouts' real property interests, specifically flooding of their real property, and met the standards for intervention under N.D.R.Civ.P. 24(a)(ii). The court explained the Board's interest was not coterminous with the Swartouts' interest and the Swartouts were situated so the disposition of this action may impair or impede their ability to protect their interest in their real property. The court recognized the Swartouts would be unable to seek relief from a water resource district if the court ordered installation of a culvert because the installation of a culvert in a township road is a matter for a township to decide under Kadlec v. Greendale Twp. Bd. of Supervisors, 1998 ND 165, ¶¶ 15-16, 583 N.W.2d 817. As a further explanation for granting the Swartouts' motion to intervene, the court cited the parties' stipulation from the dismissed appeal, which stated the "Swartout property is directly across the road from the Skogen property and would be impacted by the installation of any culvert" in the township road.
[¶ 9] We conclude the district court did not clearly err in its findings on the Swartouts' motion to intervene. The court did not err in deciding the Swartouts have an interest relating to "the property or the transaction that is the subject of the action" under N.D.R.Civ.P. 24(a)(ii) and the Swartouts are so situated that the disposition of this action may, as a practical matter, impair or impede their ability to protect that interest. As a matter of law, we conclude the court did not err in allowing the Swartouts to intervene in this action.

III
[¶ 10] The district court ultimately dismissed the Skogens' action without a trial and without excluding matters outside the pleadings. The court affectively dismissed the Skogens' action by summary judgment. See N.D.R.Civ.P. 12(b) (stating if court dismisses action and does not exclude matters outside pleading, a motion is treated as one for summary judgment under N.D.R.Civ.P. 56); Davidson v. State, 2010 ND 68, ¶ 11, 781 N.W.2d 72. We therefore review the Skogens' appeal under the standards for summary judgment, "which is a procedural device for promptly resolving a controversy on the merits without a trial if there are no disputed issues of material fact and inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." Davidson, at ¶ 11.
[¶ 11] The Skogens argue the district court erred in deciding N.D.C.C. § 32-12.1-03(3)(c), setting forth limitations on liability of political subdivisions, precluded their action for damages against the Board. They argue the Board has a mandatory statutory duty under N.D.C.C. § 24-03-06 to construct and reconstruct township roads in a manner that does not obstruct the natural flow and drainage of *643 surface water. They argue the Board's failure to comply with that mandatory duty when it reconstructed the road constitutes a breach of its statutory obligation and renders it liable for damages under N.D.C.C. §§ 32-12.1-03(1) and 58-14-01. They argue the district court misapplied N.D.C.C. § 32-12.1-03(3)(c) in a manner that renders N.D.C.C. §§ 32-12.1-03(1) and 58-14-01 null and void and immunizes the Board from damage claims resulting from the breach of its statutory duty. They also claim there is no administrative remedy that allows them to recover damages, and they have a right to pursue their damage claim against the Board. The Board responds that the district court properly applied N.D.C.C. § 32-12.1-03(3)(c) and dismissed the Skogens' claim for damages against it.
[¶ 12] This Court has recognized that an owner of a lower, or servient, estate must receive surface water from an upper, or dominant, estate in its natural flow. Jones v. Boeing Co., 153 N.W.2d 897, 903 (N.D.1967). However, the owner of an upper estate may not drain water onto a lower landowner's property through an artificial drain in unusual quantities and in a greater-than-normal velocity. Id. We have adopted a "reasonable use" rule for the discharge of surface water, which determines the rights of parties regarding the disposition of surface waters by an assessment of all the relevant factors. Id. at 903-04. We have also recognized there is no right to perfect drainage of surface waters. Eichhorn, 2006 ND 214, ¶ 24, 723 N.W.2d 112; Huber v. Oliver County, 1999 ND 220, ¶ 17, 602 N.W.2d 710.
[¶ 13] Section 24-03-06, N.D.C.C., describes surface drainage requirements for construction and reconstruction of roads and ditches in North Dakota in accordance with stream crossing standards prepared by the department of transportation and the state engineer and provides:
All highways constructed or reconstructed by the department, board of county commissioners, board of township supervisors, their contractors, subcontractors, or agents, or by any individual firm, corporation, or limited liability company must be so designed as to permit the waters running into the ditches to drain into coulees, rivers, and lakes according to the surface and terrain where the highway or highways are constructed in accordance with the stream crossing standards prepared by the department and the state engineer so as to avoid the waters flowing into and accumulating in the ditches to overflow adjacent and adjoining lands. In the construction of highways the natural flow and drainage of surface waters to the extent required to meet the stream crossing standards prepared by the department and the state engineer may not be obstructed, but the water must be permitted to follow the natural course according to the surface and terrain of the particular terrain. The department, county, township, their contractors, subcontractors, or agents, or any individual firm, corporation, or limited liability company is not liable for any damage caused to any structure or property by water detained by the highway at the crossing if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer.
[¶ 14] We have "consistently interpreted N.D.C.C. § 24-03-06 and related statutes as imposing upon a township a mandatory duty to not construct or reconstruct township roads in a way that obstructs the natural flow and drainage of surface waters." Huber, 1999 ND 220, ¶ 15, 602 N.W.2d 710. In Fandrich v. *644 Wells County Bd. of County Comm'rs, 2000 ND 181, ¶ 21, 618 N.W.2d 166, we discussed the legislative intent of N.D.C.C. § 24-03-06 and a related provision, N.D.C.C. § 24-03-08:
Effective August 1, 1999, the Legislature amended N.D.C.C. §§ 24-03-06 and 24-03-08. Section 24-03-06, N.D.C.C., was amended to replace the requirement that highways be constructed in accordance with "scientific highway construction and engineering," with the phrase, "the stream crossing standards prepared by the department and the state engineer. . . ." 1999 N.D. Sess. Laws ch. 248, § 1. The statute was also amended to provide "[i]n the construction of highways the natural flow and drainage of surface waters to the extent required to meet the stream crossing standards prepared by the department and the state engineer may not be obstructed. . . ." Id. (amended language emphasized). The statute was further amended to protect government entities and others from liability for damages "caused to any structure or property by water detained by the highway at the crossing if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer." Id. Section 24-03-08, N.D.C.C., was similarly amended to delete reference to the "maximum quantity of water, in terms of second feet, which such watercourse or draw may be required to carry," and replace it with the phrase, "design discharge that the crossing is required to carry to meet the stream crossing standards prepared by the department and the state engineer." 1999 N.D. Sess. Laws ch. 248, § 2. It was further amended to prohibit damage liability "if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer." Id.

The legislative history of the amendments reflects the reason for the changes was to promote uniformity throughout the state by having stream crossing standards prepared by the Department of Transportation and the state engineer. See Hearing on H.B. 1310 Before the Senate Political Subdivisions Committee, 56th N.D. Leg.Sess. (February 26, 1999) (testimony of State Engineer David Sprynczynatyk). Local political subdivisions were uncertain about their engineering responsibilities. Because a road cannot be engineered to take into consideration all conceivable flood events, the political subdivisions were forced to perform "a balancing act between landowners['] rights and the economics of maintaining quality roads at a price the township can afford." Hearing on H.B. 1310 Before the House Political Subdivisions Committee, 56th N.D. Leg. Sess. (January 21, 1999) (testimony of Ted D. Seibel, Wells County State's Attorney). Subsequent amendments to statutes may be used in ascertaining the legislative intent of earlier versions of the statutes. . . . The amendments to the statutes suggest the concept of reasonableness permeates the statutory mandates, and the amendments merely assigned the responsibility for determining the measure of reasonableness to the Department of Transportation and the state engineer.
[¶ 15] The issues in this case involve the Skogens' claim that the Board did not reconstruct the township road in accordance with the mandatory requirements of N.D.C.C. § 24-03-06. We consider that argument in light of the dismissal of the Skogens' appeal from the Board's decision not to install a culvert in the township road and the district court's determination *645 that N.D.C.C. § 32-12.1-03(3)(c) precluded the Skogens' action for damages.
[¶ 16] Section 58-14-01, N.D.C.C., authorizes civil actions against townships "conducted as any other action or proceeding of a similar kind is conducted," while N.D.C.C. § 58-03-15 permits appeals to a district court from township board decisions, which must be taken in accordance with the procedure in N.D.C.C. § 28-34-01. This Court has said a landowner may bring an action against a political subdivision for actual damages allegedly caused by improper surface drainage after the political subdivision has taken some action on the drainage issue. See Olson v. Cass County, 253 N.W.2d 179, 181 (N.D.1977). See also Huber, 1999 ND 220, ¶ 1, 602 N.W.2d 710 (affirming dismissal of action for damages allegedly caused by improper culvert after jury verdict and affirming dismissal of request for injunctive relief for additional culvert).
[¶ 17] We have also recognized that the doctrines of res judicata and collateral estoppel may bar courts from relitigating claims and issues previously litigated. Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc., 2007 ND 36, ¶¶ 13-14, 729 N.W.2d 101. "The applicability of res judicata or collateral estoppel is a question of law, fully reviewable on appeal." Ungar v. North Dakota State Univ., 2006 ND 185, ¶ 10, 721 N.W.2d 16. In Ungar, at ¶ 11 (citations omitted), we explained the difference between res judicata and collateral estoppel:
"Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same." Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to their parties and their privies in all other actions. Res judicata applies even if subsequent claims are based upon a different legal theory. Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.
We have also recognized that the doctrines of res judicata claim preclusion and collateral estoppel issue preclusion "should apply as fairness and justice require, and should not be applied so rigidly as to defeat the ends of justice." Riverwood Commercial Park, at ¶ 14.
[¶ 18] The parties all voluntarily stipulated to dismiss "without prejudice and on the merits" Al and Mike Skogen's appeal from the Board's decision not to install a culvert in the township road. This record reflects that the Board was unable to provide a record of those township board proceedings. See N.D.C.C. § 28-34-01 (outlining procedure to reconstruct record in appeal from decision by political subdivision). See also Shaw v. Burleigh County, 286 N.W.2d 792, 796-97 (N.D.1979) (outlining court's standard of review of county commission decision and describing method of reconstructing record). Rather, the parties stipulated to voluntarily dismiss that appeal "without prejudice and on the merits," which the district court assumed was a dismissal without prejudice after stating no party had claimed res judicata or collateral estoppel regarding that dismissal. The Board has not specifically pleaded res judicata to preclude the Skogens' action for damages in this case. See *646 N.D.R.Civ.P. 8(c) (res judicata must be pleaded as affirmative defense). Moreover, the Board acknowledged in the district court that the Skogens' request for money damages in this action negated any argument that their claim for damages must be dismissed for failure to exhaust administrative remedies and conceded N.D.C.C. § 58-14-01 authorized their claim for damages. On this record and under these circumstances, we decline to apply res judicata or issue preclusion to the Skogens' claim for damages.
[¶ 19] The district court dismissed the Skogens' claim for damages under N.D.C.C. § 32-12.1-03, which deals with limitations on liability for political subdivisions and provides, in part:
1. Each political subdivision is liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances where the political subdivision, if a private person, would be liable to the claimant. The enactment of a law, rule, regulation, or ordinance to protect any person's health, safety, property, or welfare does not create a duty of care on the part of the political subdivision, its employees, or its agents, if that duty would not otherwise exist.
. . . .
3. A political subdivision or a political subdivision employee may not be held liable under this chapter for any of the following claims:
. . . .
c. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial.
[¶ 20] The Skogens' claim for damages involves the interpretation and interrelationship of N.D.C.C. §§ 24-03-06 and 32-12.1-03. Statutory interpretation is a question of law, fully reviewable on appeal. Kadlec, 1998 ND 165, ¶ 12, 583 N.W.2d 817. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2). The primary objective in interpreting a statute is to determine the intention of the legislation. Amerada Hess Corp. v. State ex rel. Tax Comm'r, 2005 ND 155, ¶ 12, 704 N.W.2d 8.
[¶ 21] The Skogens' damages claim in this case seeks recovery under their allegation that the Board violated a mandatory statutory duty to install a culvert in this township road to comply with stream crossing standards prepared by the department of transportation and the state engineer. This record does not reflect whether that issue has been fully considered and decided by the Board in the administrative context. Our decisions *647 have consistently construed N.D.C.C. § 24-03-06 to impose a mandatory duty to construct or reconstruct roads in a manner that does not obstruct the natural flow and drainage of surface waters. See Huber, 1999 ND 220, ¶ 15, 602 N.W.2d 710 (construing statute before adoption of language regarding stream crossing standards). Section 24-03-06, N.D.C.C., is a specific statute that imposes a mandatory duty on a township and explicitly states that a "township . . . is not liable for any damage caused to any structure or property by water detained by the highway at the crossing if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer." That language indicates a specific intent to impose liability if a road is not reconstructed in accordance with stream crossing standards, and we decline to construe the more general language of N.D.C.C. § 32-12.1-03 to negate that liability for roads that do not comply with a township's mandatory duty for stream crossing standards.
[¶ 22] The Skogens alleged the township road initially had a culvert and was reconstructed without a culvert. Al Skogen submitted an affidavit stating "[t]here was a culvert in the road before improvements were made to the road. However no culvert was placed in the road when it was reconstructed." The Swartouts' answer disagreed with the Skogens' claim that the township road originally had a culvert and the Skogens' claim that the Board failed to place a culvert in the road when it was reconstructed. The Board's answer claimed it had complied with common law and statutory duties and some of the damages claimed by the Skogens may have resulted from acts or omissions by them. The Skogens also provided a letter from the office of the state engineer stating there "is a naturally created depression that exists in both sections which is obstructed by the section line road that bisects the depression and is acting as a dam without an equalization pipe installed," and "Hemen Township should follow the recommendation . . . that the township bring the road into compliance with state law and install an opening through the sectionline road . . . at an approved invert elevation to equalize the water." We harmonize N.D.C.C. §§ 24-03-06 and 32-12.1-03 and construe them to authorize an action for damages under the allegations and disputed facts in this case. We conclude there are disputed issues of material fact, and we reverse the dismissal of the Skogens' claim for damages and remand for proceedings consistent with this opinion.

IV
[¶ 23] We affirm the order granting the Swartouts' motion to intervene. We reverse the judgment dismissing the Skogens' claim for damages, and we remand for further proceedings.
[¶ 24] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ., and WADE L. WEBB, D.J., concur.
[¶ 25] The Honorable WADE L. WEBB, D.J., sitting in place of KAPSNER, J., disqualified.